DALE J. GIALI (SBN 150382)
 *dgiali@kslaw.com*
KERI E. BORDERS (SBN 194015)
 *kborders@kslaw.com*
**KING & SPALDING LLP**
633 W Fifth Street, Suite 1600
Los Angeles, CA  90071
Telephone:    +1 213 443 4355
Facsimile:    +1 213 443 4310

Attorneys for Defendant
KIND LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS GUERRA, an individual, on behalf of himself, the general public, and those similarly sued,<br><br>            Plaintiff,<br><br>    vs.<br><br>KIND LLC,<br><br>            Defendant. | Case No. 3:22-cv-06654-RS<br><br>Assigned to the Hon. Richard Seeborg<br><br>**DEFENDANT KIND LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:        April 13, 2023**<br>**Time:        1:30 p.m.**<br>**Crtrm:        3**<br><br>[[*Proposed] Order filed concurrently herewith*] |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 13, 2023, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3 on the 17th Floor of this Court, at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Richard Seeborg, defendant KIND LLC will and hereby does move the Court for an order dismissing the complaint. KIND moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6) on the grounds that plaintiff fails to state a claim upon which relief can be granted and that the Court lacks subject-matter jurisdiction because plaintiff has no standing.

Good cause exists to grant this motion because:

1.      Plaintiff's claims are expressly preempted by 21 U.S.C. 343-1(a)(4)-(5) and impliedly preempted pursuant to *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

2.      Plaintiff's deception claims are not plausible.

3.      Plaintiff lacks standing under Article III and California's Unfair Competition Law to pursue claims for injunctive relief, for products plaintiff did not purchase, and because plaintiff did not suffer an injury in fact.

4.      Plaintiff has not adequately alleged reliance.

5.      Plaintiff's claim for unjust enrichment is not an independent cause of action.

This motion is based upon this notice of motion and motion, the pleadings and other papers on file in this action, and such other oral argument and/or documentary matters as may be presented to the Court at or before the hearing on this motion.

Dated: January 26, 2023

**KING & SPALDING LLP**

By: */s/ Keri E. Borders*
Dale J. Giali
Keri E. Borders
Attorneys for Defendant
KIND LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................................................... 1

II.    FACTUAL BACKGROUND ...................................................................................... 2

       A.     FDA Regulations Governing Protein Labeling.............................................. 2

       B.     Plaintiff's Complaint...................................................................................... 3

III.   ARGUMENT ............................................................................................................... 5

       A.     Plaintiff's Challenge To The Absence Of The %DV In The Nutrition Facts
              Is Impliedly Preempted Under *Buckman* ...................................................... 5

       B.     Plaintiff's Claim That KIND's Front-Of-Pack Protein Statement Is
              Misleading Is Expressly Preempted And Implausible ................................... 8

       C.     Plaintiff Cannot Plausibly Allege Reliance ................................................ 12

       D.     Plaintiff Lacks Standing Under Article III And The UCL Because Plaintiff
              Does Not Plausibly Allege Injury ............................................................... 13

       E.     Plaintiff Lacks Standing To Pursue Injunctive Relief ................................ 14

       F.     Plaintiff Lacks Standing To Sue For Non-Purchased Products.................... 15

       G.     Plaintiff's Unjust Enrichment Claim Is Not Cognizable ........................... 16

IV.    CONCLUSION........................................................................................................... 17

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abuelhawa v. Santa Clara Univ.*,
   529 F. Supp. 3d 1059 (N. D. Cal. 2021) .................................................................................16

*Bank of New York Mellon v. Citibank, N.A.*,
   8 Cal. App. 5th 935 (2017) .....................................................................................................16

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ................................................................................................10

*Borchenko v. L'Oreal USA, Inc.*,
   389 F. Supp. 3d 769 (C.D. Cal. 2019) ..................................................................................6, 7

*Boris v. Wal-Mart Stores, Inc.*,
   35 F. Supp. 3d 1163 (C.D. Cal. 2014) ....................................................................................10

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................................................................................16

*Brown v. J.M. Smucker Co.*,
   2022 WL 3348603 (N.D. Cal. Aug. 12, 2022) .........................................................................9

*Brown v. Kellogg Co.*,
   2022 WL 983268 (N.D. Cal. Apr. 1, 2022) ..............................................................................9

*Brown v. Nature's Path Foods, Inc.*,
   2022 WL 717816 (N.D. Cal. Mar. 10, 2022)............................................................................9

*Buckman v. Plaintiffs' Legal Committee*,
   531 U.S. 341 (2001)......................................................................................................... passim

*Cheslow v. Ghirardelli Chocolate Co.*,
   445 F. Supp. 3d 8 (N.D. Cal. 2020) ........................................................................................10

*Chong v. Kind LLC*,
   585 F. Supp. 3d 1215 (N.D. Cal. 2022) ........................................................................ passim

*Cimoli v. Alacer Corp.*,
   546 F. Supp. 3d 897 (N.D. Cal. July 1, 2021) ........................................................................15

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ..................................................................................................14

*Davidson v. Sprout Foods Inc.*,
   2022 WL 13801090 (N.D. Cal. Oct. 21, 2022)......................................................................6, 7

i

*DeBons v. Globus Med., Inc.*,
   2014 WL 12495351 (C.D. Cal. Aug. 8, 2014)..........................................................................8

*Durnford v. MusclePharm Corp.*,
   907 F. 3d 595 (9th Cir. 2018) ................................................................................................10

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (2016), *as amended* (Sept. 27, 2019)...............................................................10

*In re Epogen & Aranesp Off-Label Mktg. & Sales Pracs. Litig.*,
   590 F. Supp. 2d 1282 (C.D. Cal. 2008) ...................................................................................6

*Fraker v. KFC Corp.*,
   2007 WL 1296571 (S.D. Cal. Apr. 30, 2007)...........................................................................6

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ....................................................................................................10

*Goldsmith v. Allergan, Inc.*,
   2011 WL 147714 (C.D. Cal. Jan. 13, 2011) .............................................................................6

*Great Pac. Sec. v. Barclays Capital, Inc.*,
   743 Fed. App'x 780 (9th Cir 2018) .........................................................................................12

*Herskowitz v. Apple Inc.*,
   940 F. Supp. 2d 1131 (N.D. Cal. 2013) ..................................................................................16

*Hinkley v. Baker Mills Inc.*,
   2022 WL 1767108 (D. Utah Apr. 26, 2022)..............................................................................9

*Jackson v. Gen. Mills, Inc.*,
   2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) .........................................................................15

*Joslin v. Clif Bar & Co.*,
   2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) .........................................................................15

*Krause-Pettai v. Unilever United States, Inc.*,
   2021 WL 1597931 (S.D. Cal. Apr. 23, 2021)..........................................................................16

*Lanovaz v. Twinings N. Am., Inc.*,
   726 F. App'x 590 (9th Cir. 2018) ............................................................................................14

*Loreto v. Procter & Gamble Co.*,
   515 F. App'x. 576 (6th Cir. 2013) .............................................................................................8

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..................................................................................16

*Moore v. Trader Joe's Company*,
   4 F.4th 874 (9th Cir. 2021) ...............................................................................................11, 12

ii

*Nacarino v. Kashi Co.*,
    584 F. Supp. 3d 806 (N.D. Cal. 2022) ...................................................................9, 10

*Nexus Pharm., Inc. v. Cent. Admixture Pharm. Servs., Inc.*,
    2020 WL 6555052 (C.D. Cal. Oct. 29, 2020) ...............................................................7

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) ......................................................................................6

*Pino v. Birch Benders, LLC*,
    2022 WL 4913320 (N.D. Cal. Oct. 3, 2022) .................................................................9

*Prescott v. Nestle USA, Inc.*,
    597 F. Supp. 3d 1377 (N.D. Cal. 2022) ......................................................................15

*Rahman v. Mott's LLP*,
    2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) ...........................................................15

*Rugg v. Johnson & Johnson*,
    2019 WL 119971 (N.D. Cal. Jan. 7, 2019) .................................................................16

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020) .....................................................................................12

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ......................................................................................16

*Stover v. Experian Holdings, Inc.*,
    978 F.3d 1082 (9th Cir. 2020) ....................................................................................14

*Swartz v. Dave's Killer Bread, Inc.*,
    2022 WL 1766463 (N.D. Cal. May 20, 2022) ..............................................................9

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)..........................................................................................13, 14

*Williams v. Apple*,
    449 F. Supp. 3d 892 (N.D. Cal. 2020) ..................................................................12, 13

**Federal Statutes**

21 U.S.C. § 337(a) .........................................................................................................5, 8

21 U.S.C. § 343-1 ..........................................................................................................5, 6

21 U.S.C. § 343-1(a) .......................................................................................................10

21 U.S.C. § 343(q)(1)(D).....................................................................................................2

iii

**California Statutes**

Cal. Health & Safety Code § 110100(a) ........................................................................7

**Other Authorities**

21 C.F.R. § 101.9 ............................................................................................2, 3, 4, 5

58 Fed. Reg. 2079, 2103 (Jan. 6, 1993) .........................................................................2

81 Fed. Reg. 33742, 33869 (May 27, 2016) ..................................................................2

FDA, *A Food Labeling Guide: Guidance for Industry* 30 (Jan. 2013), *available at*
      https://www.fda.gov/media/81606/download ..........................................................3

Industry Resources on the Changes to the Nutrition Facts Label, U.S. Food &
      Drug Administration (Jan. 2022), *available at* https://www.fda.gov/food/food-
      labeling-nutrition/industry-resources-changes-nutrition-facts-
      label#LabelClaims (last accessed January 24, 2023)...............................................2

1

**STATEMENT OF ISSUES TO BE DECIDED**

2      1.      Whether plaintiff's claims are impliedly preempted pursuant to *Buckman Co. v.*

3 *Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

4      2.      Whether plaintiff's claims regarding the front-of-pack protein statement are

5 expressly preempted by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343-1(a).

6      3.      Whether plaintiff's claims regarding the front-of-pack protein statement are

7 implausible.

8      4.      Whether plaintiff has adequately alleged reliance.

9      5.      Whether plaintiff has adequately alleged injury sufficient to convey standing

10 under Article III and the Unfair Competition Law.

11      6.      Whether plaintiff lacks Article III standing to pursue claims for injunctive relief.

12      7.      Whether plaintiff lacks standing to sue over non-purchased products.

13      8.      Whether plaintiff may assert a standalone claim for unjust enrichment.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

1

## I.     __INTRODUCTION__

2

      Plaintiff Chris Guerra alleges that certain of KIND LLC's ("KIND") products are

3

unlawfully and misleadingly labeled because they contain a front-of-pack statement indicating

4

the amount of protein (in grams) per serving but do not include a statement of the corrected

5

amount of protein expressed in a percent daily value (%DV) in the back label Nutrition Facts.

6

      If this case sounds familiar to this Court, that is because it is. Plaintiff's counsel

7

previously filed the same case against KIND and the Court dismissed it with prejudice. *Chong v.*

8

*Kind LLC*, 585 F. Supp. 3d 1215 (N.D. Cal. 2022). Significantly, in *Chong*, the Court found that

9

plaintiffs' claim that KIND's front-of-pack protein statements were misleading was expressly

10

preempted, and that plaintiffs' claim that the absence of the %DV in the Nutrition Facts was

11

unlawful was impliedly preempted under *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341

12

(2001). *Id*. at 1219-20. Plaintiffs appealed that decision. After multiple requests for extensions of

13

time to file their opening brief (all while plaintiffs' counsel was filing additional lawsuits on the

14

same legal theory), plaintiffs' counsel dismissed the *Chong* appeal and simultaneously filed this

15

new lawsuit against KIND. The intentional gamesmanship to delay a decision by the Ninth

16

Circuit on the applicability of the *Buckman* preemption argument to allow plaintiff's counsel to

17

prosecute more lawsuits could not be more apparent.

18

      There is no reason that the outcome of this motion to dismiss should be any different than

19

in *Chong*. Significantly, plaintiff's claims remain an improper attempt to privately enforce FDA

20

regulations that is impliedly preempted under *Buckman*. Indeed, the allegations in the complaint

21

demonstrate that these claims have nothing to do with consumer deception as there are no

22

plausible allegations of deception, reliance, or injury. Additionally, plaintiff's attempt to

23

challenge the front-of-pack protein statement as misleading is also expressly preempted. And, as

24

in *Chong*, plaintiff cannot establish standing to pursue injunctive relief.

25

      For these and other reasons as discussed below, the Court should dismiss plaintiff's

26

claims in their entirety, with prejudice.

27

28

1
2

## II.     FACTUAL BACKGROUND

### A.     FDA Regulations Governing Protein Labeling

3       This case relates to technical Food & Drug Administration ("FDA") regulations

4    regarding protein labeling. The Food, Drug & Cosmetic Act ("FDCA"), and FDA implementing

5    regulations, require the amount of "total protein" per serving to appear in the nutrition facts on

6    the label. 21 U.S.C. § 343(q)(1)(D). Nutrition information, and the requirements for the nutrition

7    facts, is subject to precise regulations appearing at 21 C.F.R. § 101.9. A food manufacturer is

8    allowed to take the nutrition information from the nutrition facts box and place it elsewhere on a

9    food label. *Id.* § 101.13(b) & (c).

10      FDA regulations specifically state that the total amount of protein by weight in grams in a

11   food product should be calculated based on the nitrogen method. *See* 21 C.F.R. § 101.9(c)(7); *see*

12   *also, e.g.*, FDA Final Rule, Food Labeling: Revision of the Nutrition and Supplement Facts

13   Labels, 81 Fed. Reg. 33742, 33869 (May 27, 2016) ("For purposes of nutrition labeling, among

14   others, protein is estimated by determining the nitrogen content of an ingredient and multiplying

15   it by a nitrogen-to-protein conversion factor."). Neither FDA nor the governing regulation alters

16   this required "nitrogen method" for measuring the total amount of protein when the product

17   makes a front-of-pack protein claim. Indeed, earlier this year, FDA confirmed that "protein

18   nutrient content claims" on product labels can and should be based on the nitrogen method.[1]

19      In addition to these regulations, FDA has specific requirements for calculating and

20   labeling a %DV for protein in the Nutrition Facts when a protein claim is made on a food label.

21   *See* 21 C.F.R. § 101.9(c)(7)(i). As specified in the regulations, the "corrected amount of protein

22   per serving" is to be expressed as a percent of daily value as determined by applying a Protein

23   Digestibility Corrected Amino Acid Score ("PDCAAS") to the total amount of protein.[2] 21

24

25   [1] *See* Industry Resources on the Changes to the Nutrition Facts Label, U.S. Food & Drug
     Administration (Jan. 2022), *available at* https://www.fda.gov/food/food-labeling-
26   nutrition/industry-resources-changes-nutrition-facts-label#LabelClaims (last accessed January
     24, 2023), at "Label Claims."

27   [2] PDCAAS is a calculation used to score the "quality" of protein based on how it is digested
     (absorbed) by the body. *See generally* Food Labeling: Mandatory Status of Nutrition Labeling
28   and Nutrient Content Revision, Format for Nutrition Label, 58 Fed. Reg. 2079, 2103 (Jan. 6,

C.F.R. § 101.9(c)(7)(i) and (ii). PDCAAS does **not** provide a quantitative measure of the total amount of protein in a food product, but instead seeks to rank the purported quality of the protein by what percentage of the protein is digested by the body. That is why the regulations require PDCAAS scoring **solely** in connection with the calculation of the %DV.

FDA regulations, however, do not generally require that the percent daily value for protein be included in the Nutrition Facts (absent a protein claim) because, based on current scientific evidence, people get sufficient protein from a normal daily diet. *See* FDA, *A Food Labeling Guide: Guidance for Industry* 30 (Jan. 2013), *available at* https://www.fda.gov/media/81606/download.

### B.    Plaintiff's Complaint

Plaintiff Chris Guerra, a California resident, brings a putative class action on behalf of purchasers of KIND brand nut bars, cereals, oatmeal, snack mixes, and other products. Compl. ¶¶ 1, 9. Plaintiff asserts that "most plant based proteins do not contain all nine essential amino acids and are low quality to humans." *Id.* ¶ 30.  And that the nuts and oats that comprise KIND products have low PDCAAS scores "meaning approximately 50-60% of the protein from those sources will be useless to humans nutritionally speaking." *Id.* "Accordingly Defendant's use of low-quality proteins in the Products means that they actually provide far less protein to humans than the Product labels claims." *Id.* ¶ 31.

Plaintiff alleges that purchasing products with "usable" protein is important to plaintiff and, because of plaintiff's focus on protein consumption, plaintiff regularly checks the Nutrition

---

1993). PDCAAS compares the amount of the essential amino acids in the food to a scoring pattern derived from the essential amino acid requirements of a preschool-age child. *Id.* at 2104. The highest PDCAAS value that any protein can achieve is 1.0, indicating that the protein will provide 100% (or more) of the nine amino acids required in the human diet. *See* 21 C.F.R. § 101.9(c)(7)(ii). Animal-based proteins tend to have higher PDCAAS scores than plant-based proteins. PDCAAS scoring, however, does not indicate the value of individual proteins consumed as part of a normal diet because it does not take into account the complementary potential of food, *i.e.*, how a food rich in a particular essential amino acid can "complement" a food low in that amino acid to result in a total diet that provides sufficient amounts of the amino acid. 58 Fed. Reg. at 2105. Because humans do not consume only a single type of protein, plant-based proteins are not "inferior" in a normal diet regardless of their PDCAAS score.

Facts while shopping for information regarding protein. *Id.* ¶ 60. Despite plaintiff's purported knowledge of proteins and the alleged importance of complete proteins to plaintiff's purchasing decision, plaintiff repeatedly purchased KIND's Dark Chocolate Nuts & Sea Salt bars with a front-of-pack label *and* Nutrition Facts statement that the product contains 6 grams of (allegedly inferior plant-based) protein per serving and mistakenly assumed it contained 6 grams of "usable" protein. *Id.* at ¶¶ 59-60. Indeed, plaintiff contends that because protein content is important to plaintiff, plaintiff regularly checks the Nutrition Facts for protein information and to compare protein content between products. Plaintiff contends that if a %DV is available (recognizing that it is not generally included because it is not a required element of the Nutrition Facts), plaintiff reviews it, but otherwise relies on the protein amount and "assumes" that all protein is complete/usable protein. *Id.*

Plaintiff claims to be injured because (i) plaintiff thought that 6 grams of protein meant 6 grams of complete/digestible protein and (ii) had KIND included a %DV, plaintiff may have been able to compare the %DV for protein to other products and plaintiff might have chosen to buy another product with a higher %DV instead of the KIND bar plaintiff purchased. *Id.* at ¶ 61. Bizarrely, plaintiff does not explain why plaintiff was unable to compare the total amount of protein between like products, or why plaintiff did not opt to buy a product with a higher amount of protein (if it was important) like the KIND Protein bar that contains soy protein (a plant-based complete protein). *See id.* ¶ 58; *see also* Exhibit B (listing KIND protein bars).

Based on the above, plaintiff sets out three theories of liability, all based on the allegation that KIND violated 21 C.F.R. §§ 101.9(c)(7)(i) because the challenged products have a front-of-pack statement of the total amount of protein, but do not include a %DV in the Nutrition Facts. *See, e.g., id.* ¶ 36.

*First*, plaintiff alleges that the Nutrition Facts is unlawful because a %DV was not provided despite a front-of-pack statement being made (Violation of the Unlawful Prong of the Unfair Competition Law ("UCL")—Fourth Cause of Action). *Id.* ¶¶ 6; 39.

*Second*, plaintiff makes the reverse claim: that the lack of the %DV in the Nutrition Facts makes the front-of-pack protein statement unlawful (Violation of the Unlawful Prong of the

4

1   UCL—Fourth Cause of Action). *Id*. ¶¶ 6-7, 37, 39.

2       **Third**, plaintiff alleges that KIND's front-of-pack protein claim is misleading because

3   plaintiff assumed that the front-of-pack protein statement referred to complete proteins, not total

4   protein, because of the omitted %DV (Fraud and Violations of the Consumers Legal Remedy

5   Act ("CLRA"), False Advertising Law ("FAL"), and the Fraudulent Prong of the UCL—First,

6   Second, Third, and Fourth Causes of Action). *Id*. ¶ 48.

7       Of course, each of these theories is really one and the same. Plaintiff does not allege (nor

8   would it be possible for plaintiff to allege) that the front-of-pack claim is, by itself, actionable.

9   Rather, the alleged liability for each of plaintiff's claims is based solely on the consequence of

10  the purportedly omitted %DV, and none of plaintiff's claims would exist independent of that

11  alleged violation.

12  **III.   ARGUMENT**

13          **A.      Plaintiff's Challenge to The Absence Of The %DV In The Nutrition Facts Is**

14                   **Impliedly Preempted Under *Buckman***

15      The premise of all plaintiff's claims is that KIND violated the FDCA (specifically, 21

16  C.F.R. § 101.9(c)(7)(i)), by failing to include a %DV in the Nutrition Facts. Plaintiff argues that

17  KIND's alleged non-compliance with 21 C.F.R. § 101.9(c)(7)(1) is the basis for the claims

18  attacking both the Nutrition Facts and the front-of-pack protein statement. Accordingly,

19  regardless of how plaintiff attempts to spin the claims or under what legal theory, the primary

20  legal issue in this case is whether plaintiff is permitted to privately enforce FDA regulations. Just

21  as this Court recognized in *Chong*, plaintiff is not. Consequently, all of the claims should be

22  dismissed as impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S.

23  341, 353 (2001).

24      As the Court is aware, *Buckman* preemption is a function of two principles. *First*, a

25  consumer may not impose—under state law—food label requirements that are different from

26  those imposed under the FDCA and its regulations. 21 U.S.C. § 343-1. *Second*, a consumer has

27  no ability to privately enforce the FDCA. 21 U.S.C. § 337(a). Congress provided no private right

28  of action under the FDCA and expressly wrote into the law that all enforcement is to be by the

5

1  U.S. government (e.g., the U.S. Food and Drug Administration), and, in limited circumstances

2  not present here, state agencies. *Id*. at § 337(b). Consumers may not side-step the no-private-

3  right-of-action principle by using alleged violations of the FDCA as a predicate for state-law

4  claims. *See Chong*, 585 F. Supp. 3d at 1219; *Davidson v. Sprout Foods Inc.*, 2022 WL

5  13801090, at *4 (N.D. Cal. Oct. 21, 2022) (plaintiff's UCL "unlawful" claims impliedly

6  preempted); *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 774 (C.D. Cal. 2019) (FDCA

7  impliedly preempts plaintiffs' UCL claim); *Goldsmith v. Allergan, Inc.*, 2011 WL 147714, at *8

8  (C.D. Cal. Jan. 13, 2011) ("No matter how artfully the Complaint is pleaded in attempting to

9  enforce the FDCA, Plaintiff cannot enforce the FDCA's off-label advertising provisions simply

10  by calling it a violation of the UCL."); *In re Epogen & Aranesp Off-Label Mktg. & Sales Pracs.*

11  *Litig.*, 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal. 2008) ("[P]laintiffs may not use . . . state unfair

12  competition laws as a vehicle to bring a private cause of action that is based on violations of the

13  FDCA."); *Fraker v. KFC Corp.*, 2007 WL 1296571, at *4 (S.D. Cal. Apr. 30, 2007) ("[T]o the

14  extent Plaintiff contends that alleged violations of the FDCA and Sherman Law give rise to

15  viable state law claims, such claims are impliedly preempted by the FDCA."). Private claims that

16  "exist solely by virtue of the FDCA" are not permitted. *Buckman*, 531 U.S. at 353.

17       As the Ninth Circuit held, flowing from these two principles, there is a "'narrow gap'

18  through which a state-law claim must fit to escape preemption by the FDCA: 'The plaintiff must

19  be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by [21

20  U.S.C. § 343-1], but the plaintiff must not be suing *because* the conduct violates the FDCA (such

21  a claim would be impliedly preempted under *Buckman*).'" *Perez v. Nidek Co.*, 711 F.3d 1109,

22  1120 (9th Cir. 2013) (citation omitted). Plaintiff cannot navigate this narrow gap.

23       *Chong* is instructive. There, this Court found that plaintiffs' claims relating to an alleged

24  failure to include a %DV are preempted under *Buckman*. 585 F. Supp. 3d at 1219-20. The *Chong*

25  plaintiffs argued that their claims were not preempted because they paralleled FDA regulations.

26  *Id*. at 1219. The Court began by working from the principle that it is true that while "the FDCA

27  does not preempt preexisting state common-law duties that 'parallel federal requirements,' it

28  does preempt state-law claims that ultimately are dependent on the existence of violations of

6

federal law." *Id*. The Court then recognized that plaintiffs' claims based on a failure to provide a %DV were not "pre-existing, traditional, state tort law claims." Instead, they relied on California's Sherman Law, "which post-dates and is entirely dependent upon the FDCA." *Id*. Accordingly, "plaintiffs' claims based on the omission of the % DV in some of KIND's product labels are preempted." *Id*. at 1219-20.

The Court's reasoning was entirely correct. Plaintiff cannot sue under California's Sherman Law (or rather, under state consumer-protection statutes to enforce the Sherman Law). The Sherman Law is statutory, not traditional state tort law, and, significantly, it does not predate the FDCA. To the contrary, "the Sherman Law references and incorporates the FDCA," such that "[the] Court cannot grant any relief to Plaintiff[s] without referring to and applying provisions of the FDCA." *Borchenko*, 389 F. Supp. 3d at 773; *cf. Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, 2020 WL 6555052, at *3 (C.D. Cal. Oct. 29, 2020) (recognizing that plaintiff is "suing to privately enforce the FDCA" where plaintiff's "claims exist only because of the FDCA's requirements"). Indeed, the Sherman Law provides that "[a]ll food labeling regulations *and any amendments to those regulations* adopted pursuant to the federal act, in effect on January 1, 1993, *or adopted on or after that date* shall be the food labeling regulations of this state." Cal. Health & Safety Code § 110100(a) (emphasis added). If FDA were to remove or modify the regulation on which plaintiff relies, the claims would fail instantly because FDA's action would also remove this requirement from the Sherman Law, negating the basis of the "unlawful" claims.

KIND anticipates plaintiff will attempt to convince the Court to change its mind by pointing to other district court decisions that have declined to apply *Buckman*. But as this Court recently pronounced, "[n]otwithstanding the contrary conclusions reached by others on this Court, without controlling guidance from the Ninth Circuit or the Supreme Court on the nature of preemption under the FDCA, there is no reason to depart from *Chong*'s earlier holding." *Davidson*, 2022 WL 13801090, at *4. No such guidance has been issued in the intervening

7

1    months since this Court's decision in *Chong*.[3]

2          There is no question that plaintiff's challenge to the absence of a %DV is wholly

3    derivative of FDA regulations and, therefore, subject to *Buckman* preemption. The FDCA

4    remains the "critical element" of plaintiff's claims, in substance if not in form because absent the

5    regulation, plaintiff would have no claim. *Loreto v. Procter & Gamble Co.*, 515 F. App'x. 576,

6    579 (6th Cir. 2013) ("The statute's public enforcement mechanism is thwarted if savvy plaintiffs

7    can label as arising under a state law for which there exists a private enforcement mechanism a

8    claim that in substance," even if not in form, "seeks to enforce the FDCA"). If plaintiff's claims

9    are nevertheless permitted to go forward, "the doctrine of implied preemption under 21 U.S.C.

10   § 337(a) and *Buckman* would be almost entirely eliminated and private citizens would in effect

11   be permitted to enforce the FDCA's requirements." *DeBons v. Globus Med., Inc.*, 2014 WL

12   12495351, at *4 (C.D. Cal. Aug. 8, 2014), *aff'd*, 668 F. App'x 258 (9th Cir. 2016). *Buckman*

13   preemption therefore applies to all of plaintiff's claims based on the alleged absence of the %DV

14   (as either a stand-alone technical violation or plaintiffs' assertion that its absence renders the

15   front-of-pack statement unlawful or misleading) and they should be dismissed with prejudice.

16          **B.    Plaintiff's Claim That KIND's Front-Of-Pack Protein Statement Is**

17                 **Misleading Is Expressly Preempted And Implausible**

18          In addition to being impliedly preempted, plaintiff's claim that KIND's failure to include

19   the %DV in the Nutrition Facts renders the front-of-pack protein statement "misleading" is

20   expressly preempted and implausible. For these reasons, plaintiff's "fraud" based claims (Causes

21   of Action under the CLRA (First Cause of Action), the FAL (Second Cause of Action), Common

22   Law Fraud (Third Cause of Action), and the Fraudulent Prong of the UCL (Fourth Cause of

23   Action) independently fail and should be dismissed.

24          ***First, plaintiff's assertion that the demonstrably true front-of-pack claim is deceptive***

25   ***because it is a statement of total protein—and not just complete protein—is expressly***

26

27   ───────────────

[3] Indeed, the fact that the Ninth Circuit has not yet weighed in on this issue stems directly
28   plaintiff's counsel's actions in dismissing the *Chong* appeal. Their gamesmanship should
     not be rewarded.

8

1   *preempted*. As this Court found in *Chong*, "a correct reading of the regulations establishes that

2   producers may state grams of protein even outside the Nutrition Facts panel calculated by the

3   nitrogen method, and without adjustment for digestibility." 585 F. Supp. 3d at 1219. Plaintiff

4   provides no reason to depart from this holding here.[4] Plaintiff's allegations cannot possibly

5   establish that KIND's front-of-pack protein quantity statements are "false or misleading" when

6   plaintiff never disputes that these allegations *accurately state the total amount of protein in the*

7   *relevant products*. Although "[p]laintiff[] contend[s] the statement is misleading because the

8   human body cannot digest all of the protein," KIND's "packaging makes no claim or insinuation

9   about protein digestibility," so KIND's "statement of protein content by weight is . . . accurate."

10  *Hinkley*, 2022 WL 1767108, at *2. In fact, the labels' front-of-pack protein statements are

11  "functionally identical to the examples of permissible statements listed in [section 101.13(i)(3)]:

12  '(e.g., '100 calories' or '5 grams of fat')." *Id.*

13      It cannot be that FDA permits (indeed, *mandates*) that food manufacturers quantify

14  protein one particular way in the Nutrition Facts, yet prohibits them from using the same exact

15  methodology elsewhere on their products' label. As Judge Chhabria explained in *Nacarino*,

16  because FDA requires manufacturers to provide a PDCAAS-adjusted percent daily value figure

17  "elsewhere on the packaging . . . ***does not mean that statements of protein quantity would be***

18  ***misleading without this additional context***." *Nacarino*, 584 F. Supp. 3d at 810 (emphasis

19  added). Indeed, "[t]o hold otherwise would be to find that an FDA-approved protein

20  measurement technique is inherently misleading. This is not a plausible interpretation of the

21  regulations." *Id.* The purpose of the regulation providing for inclusion of the %DV in the

22  _____

23  [4] And this Court is in good company. Numerous other district courts have also dismissed claims based on a front-of-pack labeling statement as preempted because FDA's required method for determining the quantity of protein in food is the nitrogen method, and this method is appropriate
24  for both the NFP and front-of-pack protein statements. *See Nacarino v. Kashi Co.*, 585 F. Supp. 3d 806, 811 (N.D. Cal. 2022), appeal filed, No. 22-15377 (9th Cir. Mar. 14, 2022); *Swartz v.*
25  *Dave's Killer Bread, Inc.*, 2022 WL 1766463, at*5 (N.D. Cal. May 20, 2022); *Brown v. Nature's Path Foods, Inc.*, 2022 WL 717816, at *6-7 (N.D. Cal. Mar. 10, 2022); *Brown v. Kellogg Co.*,
26  2022 WL 983268, at *1 (N.D. Cal. Apr. 1, 2022), appeal filed, No. 22-15658 (9th Cir. Apr. 29, 2022); *Hinkley v. Baker Mills, Inc.*, 2022 WL 1767108, at *1-2 (D. Utah Apr. 26, 2022); *Brown v.*
27  *J.M. Smucker Co.*, 2022 WL 3348603, at *3-4 (N.D. Cal. Aug. 12, 2022), appeal filed, No. 22-16326 (9th Cir. Sept. 1, 2022); *Pino v. Birch Benders, LLC*, 2022 WL 4913320, at *4 (N.D. Cal.
28  Oct. 3, 2022).

1    Nutrition Facts is "***not*** to remedy an otherwise misleading figure" on the front of the label. *Id.*

2    (emphasis added).

3           Thus, the alleged lack of the %DV cannot render the front-of-pack statement misleading,

4    and to hold otherwise would conflict with the same labeling scheme that preempts a challenge to

5    the front-of-pack protein statement. Accordingly, plaintiff's claims seek to impose labeling

6    requirements "that [are] not identical to the requirement[s]" of the FDCA and are expressly

7    preempted. *See* 21 U.S.C. § 343-1(a); *see also Durnford v. MusclePharm Corp.*, 907 F.3d 595,

8    603 (9th Cir. 2018) (state-law claims preempted where they "impose requirements for the

9    measurement of protein . . . different from those permitted under the FDCA").

10          ***Second, plaintiff's claim that the front-of-pack protein statement is misleading because***

11   ***plaintiff assumed that it included only complete proteins, not total protein, is implausible.***

12   False advertising claims under the UCL, FAL, and UCL "fail[] on the merits" if the plaintiff

13   "cannot plausibly allege" that the challenged label statement was "false or misleading" to a

14   reasonable consumer. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (2016), *as amended* (Sept. 27,

15   2016) (internal quotation marks omitted). A false-advertising claim must satisfy the "reasonable

16   consumer" test. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). The *sine qua non* of a

17   false advertising claim is an actual false or misleading statement or representation by the

18   defendant. *See Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1169-70 (C.D. Cal. 2014)

19   (liability "must be premised on some statement or representation by the defendant about the

20   product" because "liability cannot be premised solely on a consumer's assumptions about a

21   product"); *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 17 (N.D. Cal. 2020)

22   (plaintiff's misconceptions and inferences about a product were insufficient to state a claim in

23   the absence of any deceptive statements by defendant). Meeting the reasonable consumer

24   standard "requires more than a mere possibility that [defendant's] label 'might conceivably be

25   misunderstood by some few consumers viewing it in an unreasonable manner.'" *Becerra v. Dr*

26   *Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (quoting *Lavie v. Procter & Gamble*

27   *Co.*, 105 Cal. App. 4th 496, 508 (2003)).

28          Here, plaintiff does not allege that KIND made any false statements on the label. Instead,

                                                    10

claims to be misled by the "6 g protein" statement because plaintiff mistakenly believed that the statement referred to only *complete* proteins and not the total amount of protein as the language clearly states.[5] *See, e.g.,* Compl. ¶ 48. Plaintiff (and reasonable consumers) have a clear understanding of the products they purchase and it is simply not plausible that they would interpret "6 g protein" on a plant-based nut bar to mean "6g usable protein," "6g complete proteins," or "6g nutritionally available protein." *See Moore v. Trader Joe's Co.,* 4 F.4th 874, 876 (9th Cir. 2021).

In *Moore*, the plaintiff claimed that a label offering "100% New Zealand Manuka Honey" misled consumers because the product at issue consisted of "only between 57.3% and 62.6% honey derived from Manuka flower nectar." *Id*. at 876. The Ninth Circuit affirmed the dismissal of this claim, concluding that the defendant's label would leave the reasonable consumer "only with the conclusion that '100% New Zealand Manuka Honey' means that it is 100% honey whose chief floral source is the Manuka plant." *Id*. at 885. Reasoning that the "information available to a consumer is not limited to the physical label and may involve contextual inferences regarding the product itself and its packaging," *Moore* reached four critical conclusions. *Id*. at 881-85. First, the reasonable consumer is one that purchases and is knowledgeable about the challenged product. Second, "given the foraging nature of bees, a reasonable honey consumer would know that it is impossible to produce honey that is derived exclusively from a single floral source." *Id*. at 883-84. Third, "the inexpensive cost" of the honey "would signal to a reasonable consumer that the product has a relatively lower concentration of honey derived from Manuka flower nectar," as Trader Joe's Manuka Honey costs about 5% of the market rate for "92% honey derived from Manuka flower nectar." *Id*. at 884-85. Fourth, the label's "10+" rating on the Unique Manuka Factor ("UMF") scale—a metric for the purity of honey which ranges from "5+ to 26+"—conveys to the reasonable honey consumer that the honey fell "decidedly on the lower

---

[5] In *Chong*, and other protein labeling cases filed by plaintiff's counsel, plaintiffs asserted that the front of pack label statement was misleading because it was not corrected for digestibility using PDCAAS. This argument was roundly rejected as being expressly preempted. *See Chong,* 585 F. Supp. 3d at 1219. This theory is semantically different, but ultimately the crux of plaintiff's claim still appears to be that protein statements not corrected for digestibility are misleading.

1  end of the 'purity' scale," even though the scale itself was found nowhere on the label or other

2  advertising. *Id*. at 883-85.

3      *Moore*'s reasoning applies here. As plaintiff acknowledges, not all proteins are complete

4  proteins that contain all nine essential amino acids. In particular, plant-based proteins like nuts

5  are "incomplete" proteins that plaintiff contends are inferior because not all of the protein can be

6  absorbed and used by humans. Compl. ¶¶ 30-31. Given this context, a reasonable consumer

7  would not interpret "6 grams protein" to represent anything other than the total amount of protein

8  in the product. Accordingly, because it is not plausible, this claim should be dismissed.

9      **C.**    **Plaintiff Cannot Plausibly Allege Reliance**

10      Plaintiff's nonsensical allegations do not plausibly demonstrate actual reliance on the

11  missing %DV. "Plaintiffs alleging claims under the FAL and UCL are required to plead and

12  prove actual reliance on the misrepresentations or omissions at issue." *Great Pac. Sec. v.*

13  *Barclays Capital, Inc.,* 743 Fed. App'x 780, 783 (9th Cir 2018) (citing *Kwikset Corp. v. Super.*

14  *Ct.*, 51 Cal. 4th 310, 326-27) (2011)); *see also Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 912

15  (N.D. Cal. 2020) (plaintiff required to plead actual reliance on the challenged misrepresentation

16  or omission). To establish actual reliance, plaintiff must allege that "the defendant's

17  misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing

18  conduct." *Williams*, 449 F. Supp. 3d at 912 (citing *In re Tobacco II Cases*, 46 Cal.4th 298, 326

19  (2009)). Here, plaintiff does not even mention the %DV as part of plaintiff's purchasing

20  decision. Indeed, the fact that plaintiff allegedly ***proceeded to purchase the KIND products***

21  ***despite the alleged absence of this information*** demonstrates the absence of reliance and

22  confirms that KIND's omission of this information was not relevant to plaintiff's purchase. This

23  fact alone is sufficient to dismiss all of plaintiff's claims arising from the alleged absence of the

24  %DV. *See Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1143 (2020) (to have

25  standing, a plaintiff "must 'truthfully allege' that 'she would not have brought the product but for

26  the' allegedly actionable misrepresentation or omission.") (citation omitted).

27      Because plaintiff cannot articulate reliance on the absent %DV, the complaint instead

28  focuses on plaintiff's alleged reliance on the front-of-pack protein statement. But whether

plaintiff relied on the truthful front-of-pack protein statement is not relevant to whether plaintiff

sufficiently alleged reliance to support the absent %DV claims. *See Williams*, 449 F. Supp. 3d at

913-914. Regardless, plaintiff's allegations of reliance on the front-of-pack label statement are

insufficient. Plaintiff claims to have "made each of his purchases after reading and relying on the

truthfulness Defendant's *front* labels that promised the Products provided a specific number of

grams of protein per serving." Compl. ¶ 59 (emphasis added). ***But*** plaintiff purports to have

believed "the product would actually provide the full amount of protein claimed on the front

labels in a form human bodies could utilize." *Id.* So, plaintiff's reliance is not on KIND's actual

label statement, but on an unreasonable and unsupported misconception that "6 grams of protein"

meant "6 grams of usable protein." This reading is unsupportable for various reasons, including

because plant-based proteins contained in KIND products necessarily "do not contain all nine

essential amino acids and are low quality to humans." *Id*. ¶ 30. Moreover, despite the fact that

allegedly consuming a snack bar with large amounts of complete (animal) proteins was material

to plaintiff, plaintiff opted to purchase a plant-based nut bar with less protein than many other

challenged KIND products, including a KIND protein bar that contains much larger amounts of

soy protein (a complete protein). *See id.* ¶ 58; *see also* Exhibit B (listing KIND protein bars).

Accordingly, plaintiff fails to plausibly allege reasonable reliance on the truthful front-of-pack protein statement. For this independent reason, plaintiff's claims should be dismissed.

### D.    Plaintiff Lacks Standing Under Article III And The UCL Because Plaintiff Does Not Plausibly Allege Injury

Plaintiff fails to establish an injury-in-fact as a result of the alleged lack of a %DV in the

Nutrition Facts. *See, e.g, Chong*, 585 F. Supp. 3d at 1220 n.1. "Only those plaintiffs who have

been *concretely harmed* by a defendant's statutory violation may sue that private defendant over

that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).

Likewise, a plaintiff who is "not seeking to remedy any harm to herself but instead is merely

seeking to ensure a defendant's 'compliance with regulatory law'" has no standing. *Id.* at 2206.

Thus, even if plaintiff is correct that KIND should have stated the %DV in the Nutrition Facts,

plaintiff is "not accountable to the people and [is] not charged with pursuing the public interest in

13

1   enforcing [KIND's] general compliance with regulatory law." *Id.* at 2207. Plaintiff cannot

2   articulate how plaintiff possibly could have been injured by the *absence* of the %DV given that

3   plaintiff chose to purchase the product at the offered price despite plaintiff's indisputable

4   *knowledge* that the %DV was absent. *See* Compl. ¶ 60 (plaintiff "regularly checks the [Nutrition

5   Facts box] before purchasing any product for the first time, including the %DV column for

6   protein when manufacturers provide it").

7              E.       **Plaintiff Lacks Standing To Pursue Injunctive Relief**

8              To satisfy Article III's case-or-controversy requirement, a plaintiff who requests

9   injunctive relief must allege facts showing he or she likely will suffer imminent and irreparable

10  injury in the future without an injunction. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966-

11  72 (9th Cir. 2018); *see also Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1087-88 (9th Cir.

12  2020) (holding *Davidson* requires a plaintiff to plausibly allege a desire to purchase the product

13  in the future). Here, plaintiff falls woefully short of meeting that requirement.

14             Plaintiff cannot establish a likelihood of suffering imminent and irreparable harm in the

15  future because plaintiff does not plausibly allege that plaintiff will purchase KIND's products in

16  the future, much less that plaintiff would be injured because plaintiff now knows that it is a

17  plant-based product that does not contain complete proteins and also knows to look for the %DV

18  for the particulars about the incremental amount of protein the product will contribute towards

19  meeting the FDA's daily recommended intake of protein.

20             The best plaintiff can do is assert that plaintiff *may likely* purchase KIND products in the

21  future if KIND either (i) reformulates the products to not include plant-based protein or (i)

22  relabels the products so that they only state the amount of complete proteins. *See* Compl. ¶ 62.

23  Those allegations, however, are insufficiently concrete to establish standing to pursue injunctive

24  relief. *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (holding that the

25  plaintiff's "would 'consider buying'" allegations and a mere intent to purchase the defendant's

26  products in the future were insufficient to sustain Article III standing). Significantly, plaintiff's

27  potential desire to purchase the product in the future is conditioned on the impossible task of

28  converting a snack bar made solely of nuts and grains (plant-based) to a bar made from animal

                                                14

products or KIND making protein claims that are inconsistent with FDA regulations. *See Joslin v. Clif Bar & Co.*, 2019 WL 5690632, at *4 (N.D. Cal. Aug. 26, 2019) (plaintiffs lacked standing to pursue injunctive relief where they alleged defendant's product does not contain real white chocolate and suggested they "do not want products that do not contain real white chocolate"); *Prescott v. Nestlé USA, Inc.*, 597 F. Supp. 3d 1377, 1385 (N.D. Cal. 2022) (dismissing claim for injunctive relief where plaintiffs alleged that they would purchase the product again in the future if it actually contained the ingredient they wished it to or if the labeling made clear it did not contain that ingredient), *appeal pending*, 22-15706 (9th Cir.).

Plaintiff is now fully aware that KIND's front-of-pack protein claim is a statement of the quantity of protein that mirrors the Nutrition Facts, that plant-based proteins are not always fully digested by humans, and that KIND uses plant-based proteins in their products, a fact plaintiff could also verify by looking at the ingredient list or product claims like "Xg plant protein." *See* Compl. Ex. B. "[W]here a plaintiff learns information during litigation that enables her to evaluate product claims and make appropriate purchasing decisions going forward, an injunction would serve no meaningful purpose as to that plaintiff." *Jackson v. Gen. Mills, Inc.*, 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020). Accordingly, plaintiff cannot establish a likelihood of future harm sufficient to confer standing to sue for injunctive relief. *See, e.g., Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906-07 (N.D. Cal. July 1, 2021); *Rahman v. Mott's LLP*, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018).

### F.   Plaintiff Lacks Standing To Sue For Non-Purchased Products

The complaint challenges dozens of different types of products, with different ingredients. Specifically, Exhibit B identifies *48* separate products—encompassing 10 categories of products, such as "protein bars," "snack mix," and "nut clusters." Compl. Ex. B. The challenged products have a wide variety of protein amounts, ranging from 4 to 14 grams, and sometimes including specific references to "plant protein." *Id.* Plaintiff did not purchase all of these different products, much less all categories of these products. *See* Compl. ¶ 58.

Plaintiff does not have standing to assert claims regarding unpurchased products unless, at the very least, the "unpurchased products are so substantially similar to purchased products as

15

to satisfy Article III requirements." *Rugg v. Johnson & Johnson*, 2019 WL 119971, at *2 (N.D. Cal. Jan. 7, 2019); *see also Krause-Pettai v. Unilever U. S., Inc.*, 2021 WL 1597931, at *7 (S.D. Cal. Apr. 23, 2021) (granting motion to dismiss plaintiffs' claims "to the extent they rely on products [p]laintiffs did not purchase"); *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1150 (N.D. Cal. 2013) (plaintiff had no standing to assert claims on behalf of customers who bought different products). And here, the alleged products are not "substantially similar." Rather, with respect to the alleged misrepresentations at issue, every one of the products is different. Plaintiff alleges that the labels on KIND products misstate the amount of protein in those products, but the amount of protein in each of the KIND products and the ingredients from which that protein is derived varies on a product-by-product basis. *See generally* Compl. Ex. B. Moreover, the category of product is different, and when discussing protein content, a "protein" bar is fundamentally different from a nut cluster. Because the products plaintiff purchased are not "substantially similar" to the ones plaintiff did not purchase, plaintiff lacks standing to pursue claims related to those unpurchased products. *See Rugg*, 2019 WL 119971, at *2 (dismissing claims based on unpurchased products where those claims were based on "the presence of widely varying" ingredients).

### G.       Plaintiff's Unjust Enrichment Claim Is Not Cognizable

As courts have acknowledged, "California does not recognize a stand-alone cause of action for unjust enrichment." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012); *Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070 (N. D. Cal. 2021) ("California law is clear: 'Unjust enrichment is not a cause of action.'" (quoting *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018))); *Bank of N. Y. Mellon v. Citibank, N.A.*, 8 Cal. App. 5th 935, 955 (2017). Thus, because "federal courts exercising diversity jurisdiction must follow state substantive law," *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020), "courts have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020). The Court should dismiss the unjust enrichment claim.

//

1

## IV.    <u>CONCLUSION</u>

2

For the foregoing reasons, and for good cause shown, KIND respectfully requests that the

3

motion to dismiss should be granted without leave to amend.

4

Dated: January 26, 2023                                        KING & SPALDING LLP

5

6

By: */s/ Keri E. Borders*

7

Dale J. Giali
Keri E. Borders

8

Attorneys for Defendant
KIND LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17