1

**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

2

3

4

5

6

7

8

9

### UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

| | |
|---|---|
| CHRIS GUERRA, an individual, on behalf of herself, the general public, and those similarly situated, | Case No. 3:22-cv-06654-RS |
| | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| Plaintiff, | |
| v. | Hon. Richard Seeborg |
| KIND, LLC, | Hearing Date: April 13, 2023 |
| | Hearing Time: 1:30 p.m. |
| Defendant. | Courtroom: 3, 17th Floor |

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 2

        A.      Preemption Under the FDCA. ................................................................... 2

        B.      The Regulatory Framework. ...................................................................... 2

        C.      The *Chong* Decision. ................................................................................. 3

        D.      Protein Litigation in the Wake of *Chong*. ............................................... 4

III.    ARGUMENT .......................................................................................................... 5

        A.      Plaintiff's Misleading-By-Omission Claims are Not Expressly or Impliedly
                Preempted Under *Chong*'s Analysis. ........................................................ 5

                1.      The misleading-by-omission claims are not expressly preempted. ................. 5

                        i.      The misleading-by-omission claim mirrors FDA requirements. ......... 6

                        ii.     KIND's arguments for why it is not misleading to omit the %DV are
                                wrong. ................................................................................. 8

                        iii.    Plaintiff's deception claim here is different from the one in Chong. 10

                2.      The misleading-by-omission claims are not impliedly preempted. ............... 11

        B.      Plaintiff's Other Unlawful Prong Claims are Not Impliedly Preempted. ................. 13

        C.      KIND's Plausibility Challenge to the Misleading-By-Omission Claim Is Baseless. 17

        D.      KIND's Other Arguments are Without Merit. .......................................... 19

                1.      Plaintiff adequately alleges reliance. ............................................... 19

                2.      Plaintiff's economic harm suffices for Article III and statutory standing. ..... 21

                3.      Plaintiff has standing to pursue injunctive relief. .......................... 22

                4.      Plaintiff has standing to sue for substantially similar products. ................... 23

                5.      Plaintiff may assert an unjust enrichment claim. ............................ 24

        E.      Plaintiff Requests Leave to Amend If Necessary. ................................... 24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Ang v. Bimbo Bakeries USA, Inc.*,
   No. 13-cv-01196-WHO, 2014 U.S. Dist. LEXIS 34443 (N.D. Cal. Mar. 13, 2014) .................. 33

4

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F. 3d 753 (9th Cir. 2015) ........................................................................................ 34

5

6

*Bates v. Dow Agrosciences L.L.C.*,
   544 U.S. 431 (2005) ........................................................................................ 3, 10, 20

7

*Brown v. Natures Path Foods, Inc.*,
   No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022)................... 6, 9

8

*Brown v. Van's Int'l Foods, Inc.* ("*Van's I*"),
   No. 22-cv-00001-WHO, 2022 U.S. Dist. LEXIS 84477 (N.D. Cal. May 10, 2022) ............ passim

9

10

*Brown v. Van's Int'l Foods, Inc.* ("*Van's II*"),
   No. 22-cv-00001-WHO, 2022 U.S. Dist. LEXIS 154627 (N.D. Cal. Aug. 22, 2022).......... passim

11

*Bruton v. Gerber Prods. Co.*,
   No. 15-15174, 2017 U.S. App. LEXIS 12833 (9th Cir. July 17, 2017) ........................................ 24

12

13

*Bruton v. Gerber Products Co.*,
   703 F. App'x 468 (9th Cir. 2017) ........................................................................................ 33

14

*Buckman v. Plaintiffs' Legal Committee*,
   531 U.S. 341 (2001) ........................................................................................ passim

15

16

*Chong v. Kind LLC*,
   585 F. Supp. 3d 1215 (N.D. Cal. 2022)........................................................................ passim

17

*City & Cty. of S.F. v. Purdue Pharma L.P.*,
   491 F. Supp. 3d 610 (N.D. Cal. 2020)........................................................................ 16

18

19

*Clancy v. Bromley Tea Co.*,
   308 F.R.D. 564 (N.D. Cal. 2013) ........................................................................ 19, 22

20

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ........................................................................................ 27

21

22

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ........................................................................ 1, 31, 32

23

*Davidson v. Sprout Foods Inc.*,
   No. 22-cv-01050-RS, 2022 U.S. Dist. LEXIS 121893 (N.D. Cal. July 11, 2022)................. 32, 33

24

25

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*,
   520 U.S. 806 (1997) ........................................................................................ 23

26

*De Keczer v. Tetley USA, Inc.*,
   No. 5:12-CV-02409-EJD, 2014 U.S. Dist. LEXIS 121465 (N.D. Cal. Aug. 28, 2014).............. 19

27

28

*DeSoto v. Yellow Freight Sys.*,
  957 F.2d 655 (9th Cir. 1992) ................................................................................. 34

*Florida Lime & Avocado Growers v. Paul*,
  373 U.S. 132 (1963) ............................................................................................. 23

*Gitson v. Trader Joe's Co.*,
  63 F. Supp. 3d 1114 (N.D. Cal. 2014) .................................................................. 32

*Ham v. Hain Celestial Grp., Inc.*,
  70 F. Supp. 3d 1188 (N.D. Cal. 2014) .................................................................. 24

*Hardeman v. Monsanto Co.*,
  997 F.3d 941 (9th Cir. 2021) ................................................................................. 8

*Harris v. McDonald's Corp.*,
  No. 20-cv-06533-RS, 2021 U.S. Dist. LEXIS 103615 (N.D. Cal. Mar. 24, 2021) ...... 31

*Hawkins v. Kroger Co.*,
  906 F.3d 763 (9th Cir. 2018) ................................................................................. 8

*Hendricks v. StarKist Co.*,
  30 F. Supp. 3d 917 (N.D. Cal. 2014) .................................................................... 19

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) .................................................................. 18

*In re Trader Joe's Tuna Litig.*,
  289 F. Supp. 3d 1074 (C.D. Cal. 2017) ................................................................ 22

*Jackson v. Balanced Health Prods.*,
  No. C 08-05584 CW, 2009 U.S. Dist. LEXIS 48848 (N.D. Cal. June 10, 2009) ....... 17

*Jovel v. I-Health, Inc.*,
  No. 12-CV-5614 (JG), 2013 U.S. Dist. LEXIS 139661 (E.D.N.Y. Sep. 27, 2013) ..... 16, 17

*Kane v. Chobani, Inc.*,
  No. 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 98752 (N.D. Cal. July 12, 2013) ..... 16, 17

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) .......................................................................................... 25

*Kwikset Corp. v. Superior Court*,
  246 P.3d 877 (Cal. 2011) ...................................................................................... 30

*Lanovaz v. Twinings N. Am., Inc.*,
  726 F. App'x 590 (9th Cir. 2018) .......................................................................... 32

*Locklin v. StriVectin Operating Co.*,
  No. 21-cv-07967-VC, 2022 U.S. Dist. LEXIS 52461 (N.D. Cal. Mar. 23, 2022) ...... 34

*Loop AI Labs, Inc. v. Gatti*,
  No. 15-cv-00798-HSG, 2015 U.S. Dist. LEXIS 117268 (N.D. Cal. Sep. 2, 2015) ..... 34

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ............................................................................... 30

*McClellan v. I-Flow Corp.*,
    776 F.3d 1035 (9th Cir. 2015) ...................................................................... 16, 20, 21

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ...................................................................... 11, 20, 22, 23

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) ................................................................................ 27

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ............................................................................ 25, 26

*Nacarino v. Chobani, LLC*,
    No. 20-cv-07437-EMC, 2022 U.S. Dist. LEXIS 20671 (N.D. Cal. Feb. 4, 2022) ...................... 26

*Nacarino v. Kashi Co.*,
    584 F. Supp. 3d 806 (N.D. Cal. 2022) .................................................................... 10

*Penikila v. Sergeant's Pet Care Prods., LLC*,
    442 F. Supp. 3d 1212 (N.D. Cal. 2020) ................................................................... 33

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) ......................................................................... 16, 18

*Pino v. Birch Benders, LLC*,
    No. 22-cv-02194-TSH, 2022 U.S. Dist. LEXIS 180804 (N.D. Cal. Oct. 3, 2022) .............. passim

*Plumley v. Massachusetts*,
    155 U.S. 461 (1894) ....................................................................................... 21

*Rausch v. Flatout, Inc.*,
    No. 3:22-cv-04157-VC (N.D. Cal. Jan. 11, 2023) ........................................................ 10

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ........................................................................ 8, 9, 10

*Retail Prop. Trust v. United Broth. of Carpenters*,
    768 F.3d 938 (9th Cir. 2015) .............................................................................. 24

*Ries v. Arizona Iced Tea*,
    287 F.R.D. 523 (N.D. Cal. 2012) .......................................................................... 31

*Roffman v. Perfect Bar, LLC* ("*Perfect Bar*"),
    No. 22-cv-02479-JSC, 2022 U.S. Dist. LEXIS 159762 (N.D. Cal. Sep. 2, 2022) .............. passim

*Roffman v. REBBL, Inc.* ("*REBBL*"),
    No. 22-cv-05290-JSW, 2023 U.S. Dist. LEXIS 16166 (N.D. Cal. Jan. 31, 2023) .............. passim

*Ross v. Clover Stornetta Farms*,
    No. C-13-01517 EDL, 2014 U.S. Dist. LEXIS 5408 (N.D. Cal. Jan. 14, 2014) .................. 19

*Samet v. P&G*,
    5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013) .................. 20

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ............................................................................ 34

*Sciortino v. PepsiCo, Inc.*,
 108 F. Supp. 3d 780 (N.D. Cal. 2015) ................................................................... 19

*Stengel v. Medtronic Inc.*,
 704 F.3d 1224 (9th Cir. 2013) .................................................................... 18, 22

*Swartz v. Dave's Killer Bread, Inc.*,
 No. 4:21-cv-10053 (N.D. Cal. Jan. 9, 2023) .................................................. passim

*Swearingen v. Santa Cruz Nat., Inc.*,
 No. 13-cv-04291-SI, 2016 U.S. Dist. LEXIS 109432 (N.D. Cal. Aug. 17, 2016) ..................... 19

*Transunion LLC v. Ramirez*,
 141 S. Ct. 2190 (2021) ........................................................................... 29, 30

*Trazo v. Nestlé USA, Inc.*,
 No. 5:12-CV-2272 PSG, 2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013) ................... 21

*United States v. Knight*,
 580 F.3d 933 (9th Cir. 2009) ........................................................................ 11

*Universal Health Services, Inc. v. U.S.*,
 136 S. Ct. 1989 (2016) ............................................................................. 14

*Vassigh v. Bai Brands LLC*,
 No. 14-cv-05127-HSG, 2015 U.S. Dist. LEXIS 90675 (N.D. Cal. July 13, 2015) .......... 19, 21, 22

*Werdebaugh v. Blue Diamond Growers*,
 No. 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013) ................... 19

*Williams v. Gerber Prods. Co.*,
 552 F. 3d 934 (9th Cir. 2008) ............................................................. 14, 24, 25

*Wolfe v. Strankman*,
 392 F.3d 358 (9th Cir. 2004) ........................................................................ 29

*Wyeth v. Levine*,
 555 U.S. 555 (2009) ................................................................................. 11

*Zeiger v. WellPet LLC*,
 526 F. Supp. 3d 685 (N.D. Cal. 2021) ............................................................... 27

**Statutes**

136 Cong. Rec. 1539 (daily ed. July 30, 1990) ........................................................ 2

21 U.S.C. § 321(n) ................................................................................. 8, 9

21 U.S.C. § 343-1(a)(4) ........................................................................... 2, 7

H.R. Rep. 101-538 (June 13, 1990) .................................................................... 2

**Other Authorities**

55 Fed. Reg. 29476 .............................................................................. 9, 18

56 Fed. Reg. 60421 ............................................................................................................... 8, 18

56 Fed. Reg. 60426 ............................................................................................................... 8, 18

58 Fed. Reg. 2079 ................................................................................................................. 9, 18

58 Fed. Reg. 2101 ................................................................................................................. 9, 18

58 Fed. Reg. 2102 ................................................................................................................. 9, 18

58 Fed. Reg. 2302 ...................................................................................................................... 3

58 Fed. Reg. 2310 ...................................................................................................................... 3

**Regulations**

21 C.F.R. § 101.13 ...................................................................................................................... 3

21 C.F.R. § 101.13(b) ......................................................................................................... passim

21 C.F.R. § 101.13(n) ......................................................................................................... passim

21 C.F.R. § 101.9(c)(7) ................................................................................................... 2, 9, 18

21 C.F.R. § 101.9(c)(7)(i) ................................................................................................... passim

21 C.F.R. § 101.9(c)(7)(ii) .......................................................................................................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

Defendant KIND, LLC ("KIND") bases its Motion primarily on the Court's order in *Chong v. Kind LLC*, 585 F. Supp. 3d 1215, 1218 (N.D. Cal. 2022) and tries to paint this case as identical. ***It is not***. *Chong* dealt with allegations that front label protein quantity claims were misleading "because the numbers were not adjusted for 'digestibility'." *Id*. at 1217. Here Plaintiff alleges that KIND's labeling is misleading solely due to its ***omission*** of the ***FDA-required*** percent daily value ("%DV"), which would have revealed that the products provide significantly less of the daily value of protein than the front label suggests. This claim tracks the FDA's regulations—which require the %DV upon making a "protein claim"—but is based on traditional state false advertising laws that predate the FDCA, so it escapes both the express and implied preemption analyses set forth in *Chong*.

KIND's remaining arguments are also unavailing. It contends that Plaintiff does not have an injury-in-fact for Article III standing, even though Plaintiff suffered economic harm by paying a price premium as a result of KIND's misleading labeling. KIND also argues that Plaintiff has no standing for the Products that he did not purchase. But all of the challenged Products are "substantially similar": they have protein claims, failed to include the %DV, and consist of low-quality proteins. Plaintiff has standing for injunctive relief because he has alleged that he continues to desire to purchase the Products. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). Further, contrary to what Defendant argues, unjust enrichment is a valid cause of action in California.

Plaintiff does asserts a UCL unlawful prong claim alleging that KIND's protein claims are ***unlawful per se*** because the regulations—incorporated into state law via California's Sherman Law—expressly prohibit manufacturers from making protein claims ***unless*** they provide a %DV, which KIND failed to do. 21 C.F.R. §§ 101.13(n) & (b); *id*. § 101.9(c)(7)(i). Although different from the unlawfulness claim at issue in *Chong*, Plaintiff acknowledges that it would be subject to the same implied preemption analysis as the claim in that case. Although Plaintiff is mindful that the Court is likely to follow its decision in *Chong*, he respectfully asks that the Court take a "fresh look" at that implied preemption holding. Every subsequent court has refused to find identical unlawful prong claims impliedly preempted. *See Swartz v. Dave's Killer Bread, Inc.*, No. 4:21-cv-10053, ECF No. 46 at 4–5 (N.D. Cal. Jan. 9, 2023); *Brown v. Van's Int'l Foods, Inc.* ("*Van's I*"), No. 22-cv-00001-

1    WHO, 2022 U.S. Dist. LEXIS 84477, at *16–17 (N.D. Cal. May 10, 2022); *Pino v. Birch Benders,*

2    *LLC*, No. 22-cv-02194-TSH, 2022 U.S. Dist. LEXIS 180804, at *11–12 (N.D. Cal. Oct. 3, 2022);

3    *Roffman v. Perfect Bar, LLC* ("*Perfect Bar*"), No. 22-cv-02479-JSC, 2022 U.S. Dist. LEXIS 159762,

4    at *10–11 (N.D. Cal. Sep. 2, 2022); *Roffman v. REBBL, Inc.* ("*REBBL*"), No. 22-cv-05290-JSW,

5    2023 U.S. Dist. LEXIS 16166, at *10 (N.D. Cal. Jan. 31, 2023).

6    ## II.    BACKGROUND

7    ### A.    Preemption Under the FDCA.

8    The Food Drug and Cosmetic Act ("FDCA") is a sweeping regulatory scheme that governs

9    food, drugs, cosmetics, and medical devices. In 1990, Congress passed the Nutrition Labeling and

10   Education Act ("NLEA") to amend the FDCA to create uniform nutrition labeling. H.R. Rep. 101-

11   538 (June 13, 1990). It included an express preemption provision stating that:

12   > no State or political subdivision of a State may directly or indirectly establish under
13   > any authority or continue in effect as to any food in interstate commerce -- * * * any
     > requirement for nutrition labeling of food that is not identical to the requirement
14   > of section 343(q) of this title, * * *

15   21 U.S.C. § 343-1(a)(4). Nevertheless, Congress intentionally allowed states to enforce food labeling

16   requirements that parallel federal requirements. 136 Cong. Rec. 1539 (daily ed. July 30, 1990). So

17   long as the state "rule of law to be obeyed" is the same as that of federal law, state law is not

18   preempted *despite* other differences. *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 445, 447–48

19   (2005).

20   ### B.    The Regulatory Framework.

21   The FDA regulates what manufacturers may say about protein. In so doing, it recognizes the

22   critical distinction between protein quality and quantity and imposes specific requirements to account

23   for both in the NFP. All NFPs must state the quantity of grams of protein per serving. 21 C.F.R. §

24   101.9(c)(7). And, if, as here, the Product makes a "protein claim," then the manufacturer "***shall***" (1)

25   calculate the "corrected amount of protein per serving" using the PDCAAS method, which accounts

26   for protein quality, and (2) provide a "statement of the corrected amount of protein" inside the NFP

27   "expressed as" a %DV. 21 C.F.R. § 101.9(c)(7)(i). The purpose of this is to inform consumers about

28   the amount of protein in the product the human body can actually use. ECF 1 at ¶¶ 4–5, 38.

The regulations governing front label claims (i.e., nutrient content claims) also expressly condition a manufacturer's ability to make such claims upon providing all required information for the nutrient in the NFP. Section 101.13(n) states that "[n]utrition labeling in accordance with § 101.9, § 101.10, or § 101.36, as applicable, shall be provided for any food for which a nutrient content claim is made." Section 101.13(b) in turn provides that "a nutrient content claim[] may not be made on the label or in labeling of foods unless the claim is made in accordance" with all of § 101.13, which includes § 101.13(n), and, thus, by extension, § 101.9(c)(7)(i). Indeed, the FDA explicitly stated that § 101.13(n) means a manufacturer can only make "a nutrient content claim . . . on the label or in labeling of a food, *provided* that the food bears nutrition labeling that complies with the requirements in proposed § 101.9." 58 Fed. Reg. 2302, 2310 (emphasis added).

Because KIND did not comply with § 101.9(c)(7)(i), its front label claims were unlawful *per se* under California's Sherman Law. Complaint (ECF 1) at ¶¶ 35–39. The omission of the %DV also makes KIND's front label protein claims misleading under California's traditional false advertising laws. Had KIND included a %DV in the NFP as it was required to do, it would have revealed that a significant portion of the protein KIND uses in its products is useless to humans because KIND's products consist of low quality protein sources. *Id*. ¶¶ 7, 48.

## C.    The *Chong* Decision.

This Court previously addressed claims involving KIND's protein labeling in *Chong*. The Complaint in *Chong* advanced two theories of liability. The first theory was that KIND's front label protein claims were misleading because the methodology KIND used (nitrogen testing) overstates the actual protein quantity since it does not "adjust[] for 'digestibility.'" *Chong*, 585 F. Supp. 3d at 1217. Much of the parties' briefing focused on this theory and whether the FDCA expressly preempted it. The Court ultimately held that it did. *Id*. at 1219. Plaintiff does not assert that theory here.

The second theory alleged that KIND's omission of the %DV in the NFP violated the Sherman Law. *Id*. at 1216. While the Court agreed that KIND's omission of the %DV paralleled FDA regulations, and was not expressly preempted, it found that the claim was impliedly preempted under *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001) since the claim did not "rely[] on

traditional state tort law which had predated the federal enactments in question." *Id*. at 1219–20. The Plaintiffs there did not assert, and the Court did not consider, a claim that the omission of the %DV rendered KIND's labeling misleading under California's traditional false advertising laws. *Id*.

Plaintiff Guerra alleges two ***different*** theories ***not at issue*** in *Chong*: (1) that KIND's omission of the %DV is misleading because consumers believe that they will receive the health and dietary benefits of the full quantity of protein advertised on the front label when the %DV would have revealed that the Products provide significantly less of the daily value of protein than products with comparable protein quantities; and (2) that KIND's front label protein claims are unlawful *per se* because FDA regulations (incorporated via the Sherman Law), including §§ 101.9(c)(7)(i), 101.13(b) & (n) prohibit such claims. Compl. ¶¶ 19–20. The only overlap with *Chong* is Plaintiff's third theory, which alleges that KIND unlawfully omitted the %DV in the NFP even though § 101.9(c)(7)(i) required it. *Id*.

### D.    Protein Litigation in the Wake of *Chong*.

Since *Chong*, numerous courts in this District have allowed identical claims to proceed against other defendants. Judges Gonzalez-Rogers, Orrick, Gilliam, White, and Hixon have all held that the misleading-by-omission claim is not expressly preempted and may proceed. *Swartz*, No. 4:21-cv-10053-YGR, ECF No. 46 at 4; *Van's I*, 2022 U.S. Dist. LEXIS 84477, at *16–17; *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *15, n.6 (N.D. Cal. Mar. 10, 2022); *REBBL*, 2023 U.S. Dist. LEXIS 16166, at *10; *Pino*, 2022 U.S. Dist. LEXIS 180804, at *12. Similarly, every judge to consider the theory that the front label is unlawful *per se* have refused to find it impliedly preempted. *Swartz*, No. 4:21-cv-10053-YGR, ECF No. 46 at 2; *Van's I*, 2022 U.S. Dist. LEXIS 84477, at *17–18, *27; *Perfect Bar*, 2022 U.S. Dist. LEXIS 159762, at *14; *REBBL*, 2023 U.S. Dist. LEXIS 16166, at *12–13; *Pino*, 2022 U.S. Dist. LEXIS 180804, at *2–9. In doing so, these judges split with *Chong*'s reasoning on implied preemption. *Id*.

These judges have also rejected other challenges to these claims as well, including to standing, reasonable consumer deception, and express preemption. *See REBBL*, 2023 U.S. Dist. LEXIS 16166, at *1–11 (rejecting express preemption of the misleading-by-omission claim and challenges to standing to seek injunctive relief and for unpurchased products); *Brown v. Van's Int'l Foods, Inc.*

("*Van's II*"), No. 22-cv-00001-WHO, 2022 U.S. Dist. LEXIS 154627, at *10–22 (N.D. Cal. Aug. 22, 2022) (rejecting reliance and reasonable consumer deception challenges to both claims); *Pino*, 2022 U.S. Dist. LEXIS 180804, at *2–9 (rejecting challenges to reliance, standing to seek injunctive relief), *Perfect Bar*, 2022 U.S. Dist. LEXIS 159762, at *15–18 (rejecting reliance challenge to unlawful prong claim); *Swartz*, No. 4:21-cv-10053-YGR, ECF No. 46 at 3–8 (rejecting challenges to standing for unpurchased products, unjust enrichment claim, and reliance).

## III.   ARGUMENT

### A.   Plaintiff's Misleading-By-Omission Claims are Not Expressly or Impliedly Preempted Under *Chong*'s Analysis.

Plaintiff's primary theory of fraud/deception under state law is that KIND's label deceived consumers by omitting a qualifying %DV statement in the NFP. The absence of the %DV made the package misleading because, without it, consumers have no reason to believe that they will receive anything less than all of the dietary and health benefits they would expect to receive from the full quantity of protein advertised on the front label. The %DV is designed to provide consumers with insights into protein quality, i.e., how much of the protein the human body can actually use; omitting it enabled Defendant to conceal the fact that its Products "contain low quality proteins." Compl. at ¶ 7. Plaintiff further alleges that "[h]ad Defendant complied with the law, the statement of the corrected amount of protein would have revealed the Products provide significantly less of the daily value of protein than high quality protein products with comparable protein quantities." *Id.* at ¶ 20.

KIND asserts that this claim is both impliedly and expressly preempted. But, even under *Chong*'s preemption analysis, KIND's argument fails.

#### 1.   The misleading-by-omission claims are not expressly preempted.

The FDCA expressly preempts only those state law claims that impose requirements "not identical to" its own. *Hawkins v. Kroger Co.*, 906 F.3d 763, 769 (9th Cir. 2018). "The phrase 'not identical to' means 'that the State requirement directly or indirectly imposes obligations or contains provisions ***concerning the composition or labeling of food*** that are not imposed by or contained in the applicable federal regulation or differ from those specifically imposed by or contained in the applicable federal regulation.'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015)

(emphasis added). "[A] requirement is a rule of law that must be obeyed." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 956 (9th Cir. 2021). If a state law cause of action imposes a labeling requirement "identical to the federal labeling requirements," then it is not preempted. *Reid*, 780 F.3d at 959.

### i.   The misleading-by-omission claim mirrors FDA requirements.

When it comes to making voluntary protein claims on the front label, the federal requirement is clear: either provide a statement of the protein's quality in the NFP expressed as a %DV or do not make any protein claims at all. 21 C.F.R. § 101.9(c)(7)(i); *id.* § 101.13(n) & (b). Indeed, this court acknowledged as much in *Chong*, i.e., that "when a manufacturer makes a nutrient content claim for protein, it is ***required*** to provide a '% Daily Value' figure in the Nutrition Facts panels." 585 F. Supp. 3d at 1218 (emphasis added). The state law requirement Plaintiff seeks to enforce here is identical: KIND must either put a %DV in the NFP or not make protein claims. Compl. ¶¶ 6, 36, 39 Because the ***requirements*** are the same, Plaintiff's state law claims are not preempted. *Reid*, 780 F.3d at 959. That is why multiple courts have held that identical misleading-by-omission claims about the protein %DV are not preempted. *See Van's I*, 2022 U.S. Dist. LEXIS 84477, at *17–18 (finding that the theory "is not expressly preempted by FDA regulations because it is based on an alleged violation of FDA regulations"); *Natures Path*, 2022 U.S. Dist. LEXIS 42760, at *15, n.6 (holding that the claim "[is] clearly not expressly preempted by FDA regulations because [it is] explicitly based on violations of specific FDA regulations")[1]; *REBBL*, 2023 U.S. Dist. LEXIS 16166, at *10 (similar); *Swartz*, No. 4:21-cv-10053-YGR, ECF No. 46 at 4 (similar); *Pino*, 2022 U.S. Dist. LEXIS 180804, at *11–12 (similar).

Unable to escape this obvious conclusion, KIND tries to shift the focus away from the ***requirements*** of state and federal law, and instead argues that the ***reasons*** behind the %DV requirements are different. KIND quotes dicta from Judge Chhabria's decision in *Nacarino*—which did not involve the misleading-by-omission claim—where he stated that he did not believe that the

---

[1] Judges Orrick and Gilliam held that this claim is legally plausible and not preempted, though they both dismissed with leave to amend to allege that the plaintiffs relied upon the NFP. Here, Plaintiff has already pled reliance on the NFP. *See* Compl. at ¶¶ 60-1. Upon amendment, Judge Orrick upheld the claim based upon identical reliance allegations to those here. *Van's II*, 2022 U.S. Dist. LEXIS 154627, at *2–3. Other courts have similarly found virtually identical factual allegations sufficient to support reliance. *See Swartz*, No. 4:21-cv-10053-YGR, ECF No. 46 at 3–4; *Van's II*, 2022 U.S. Dist. LEXIS 154627, at *10–22; *Roffman*, 2022 U.S. Dist. LEXIS 159762, at *11.

FDA imposed the %DV requirement "to remedy an otherwise misleading [front-label] figure, but to supply protein-conscious consumers with information that gives them further assistance in deciding what to buy." *See* MTD at 8–9 (quoting *Nacarino v. Kashi Co.*, 584 F. Supp. 3d 806, 810 (N.D. Cal. 2022)). As explained below, Plaintiff disagrees with that conclusion, and Judge Chhabria has since indicated that he may have gotten this point wrong and is currently reconsidering it. *See Rausch v. Flatout, Inc*., No. 3:22-cv-04157-VC, ECF No. 38 (N.D. Cal. Jan. 11, 2023) (attached as Exhibit A hereto). Regardless, KIND's argument misunderstands the preemption analysis. State and federal law need not agree on everything. Even if state law views the omission as misleading and federal law does not, that difference is irrelevant because it does not go to the "requirements . . . concerning the composition or labeling of food." *Reid*, 780 F.3d at 959. And it cannot render two ***identical labeling requirements*** (put a %DV in the NFP upon making a protein claim) somehow non-identical. *C.f. Bates*, 544 U.S. at 448 ("imposing different or additional *remedies*" does not make for "different or additional *requirements*") (emphasis in original).

Indeed, as the Supreme Court has held, "the purpose of Congress is the ultimate touch-stone in every pre-emption case" and "Congress' intent, of course, primarily is discerned from the language of the pre-emption statute" itself. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485–86 (1996). Here, the preemption provision is laser focused on the ***requirements*** of state and federal law—i.e., the ultimate rule about what manufacturers must say on the label—and nothing else, which makes sense given that Congress's goal was to create a uniform national labeling scheme. So long as what manufacturers have to say is identical to the FDA regulations, Congress's goal is achieved. Moreover, Congress knew when it enacted this express preemption provision in 1990 that states have long regulated food labels through deceptive advertising laws. *See United States v. Knight*, 580 F.3d 933, 940 (9th Cir. 2009) ("Congress is presumed to know existing law."). It nevertheless chose ***not*** to preempt these false advertising laws ***unless*** they imposed different labeling rules on manufacturers. 21 U.S.C. § 343-1(a)(4); *see also Wyeth v. Levine*, 555 U.S. 555, 565, n.3 (2009) ("Congress does not cavalierly pre-empt state-law causes of action."). Thus, even if there is some tension between the ***reasons*** state and federal law impose the %DV requirement—i.e., the state believes its omission would be misleading when the product makes a protein claim, and the FDA simply believes it is "additional

information" consumers should have when a product makes a protein claim—Congress has, through the express preemption provision, "nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them." *Wyeth*, 555 U.S. at 575.

### ii. KIND's arguments for why it is not misleading to omit the %DV are wrong.

Setting aside KIND's failure to show that Plaintiff's claim imposes different **requirements**, KIND's assertion that the FDA does not deem the %DV omission to be misleading is also wrong. The FDCA specifically provides that labeling is misleading where it "fails to reveal facts material in the light of such representations" made on the label. 21 U.S.C. § 321(n). By touting protein quantity on the front label and in essence advertising "buy this product because of its protein," KIND has made the quality of its protein material. Its failure to reveal—through the %DV—the fact its products contain poor quality protein is thus the exact kind of misleading labelling that the FDCA prohibits.

Indeed, in a recent order in a similar misleading-by-omission case, Judge Chhabria recognized this. He stated:

> "The Court is concerned that the statement [from *Nacarino* about the %DV not being to remedy an otherwise misleading figure] was incorrect. Perhaps a better way to understand the FDA's regulations is to say that it is not misleading to put the unadjusted amount of protein on the nutrition facts panel, but once [a] manufacturer calls attention to that figure elsewhere on the label, *those* statements *are* misleading within the meaning of the FDCA without including, as a disclaimer, the corrected amount of protein, as expressed as a percent of daily value, in the nutrition facts panel."

Ex. A. (emphasis in original).

Moreover, the FDA has long-recognized that even a statement simply "declaring that the product contained a **specified amount of a nutrient** could be **misleading**" by giving consumers "the false impression that the product would assist them in maintaining healthy dietary practices **relative to the amount of the nutrient consumed** when it, in fact, would not." 56 Fed. Reg. 60421, 60426 (emphasis added). That is precisely the circumstance here. Because reasonable consumers do not understand protein digestibility or amino acid profiles, they believe when they see "6g protein" that they will receive **all** of the nutritional benefits of the full 6 grams when, in fact, they will not. Indeed, this is the reason the FDA recognizes that "[i]nformation on protein quantity alone **can be misleading** on foods that are of low protein quality." 58 Fed. Reg. 2079 at 2101–2 (emphasis added).

It is also why the FDA ***requires*** the %DV ***anytime*** a product makes a protein claim. According to the FDA, the %DV enables consumers to "be able to judge the usefulness of a food in meeting overall daily nutrient requirements or recommended consumption levels and to compare the nutrient contributions of different foods." 55 Fed. Reg. 29476. Without it, consumers cannot compare the value of protein product-to-product in the manner FDA envisioned because much of the protein claimed on the front label may be useless, and they may be misled. Accordingly, anytime a product ***advertises its protein***, manufacturers may no longer state protein quantity ***alone*** in the NFP; instead, they ***must*** provide a statement of the "corrected amount of protein per serving," calculated according to the PDCAAS method, and "expressed as" a %DV. 21 C.F.R. §§ 101.9(c)(7)(i)–(ii).

As a result, KIND's attempts to argue that its front label claims cannot be misleading simply because the mirror statements permitted inside the NFP fall flat. MTD at 8–9. The fact that the FDA allows standalone protein quantities in the NFP ***when no protein claim is made*** does not mean that such claims can never be misleading without additional context when the product is ***advertising itself on the basis of protein***. Rather, as the FDA explained, when it promulgated § 101.9(c)(7), it permitted standalone nitrogen claims inside the NFP in the absence of protein claims *not* because it has determined the method is inherently non-misleading in all contexts, but because it is cheap, and "[b]ecause protein intakes generally are adequate and not a public health concern for" adults, meaning that the accuracy of the protein quantity was not that critical. 58 Fed. Reg. 2079, at 2102. As such, FDA decided that the "additional costs associated with determination of the PDCAAS ... are not warranted" in those circumstances. *Id*. However, if a party ***advertises*** a product by making a front-label protein claim, then the rules change, and the expense of PDCAAS is warranted. *Id.* In those circumstances, it is perfectly reasonable to conclude that protein advertising claims are ***misleading*** under federal law without this additional information on the quality of the product's protein and how it fits into consumers' daily protein nutritional requirements.

Finally, the NLEA does not give the term "misleading" any special "regulatory" meaning; rather, the statute provides various factors should be "taken into account" under 21 U.S.C. § 321(n), including whether the labelling "fails to reveal facts material in the light of such representations." In the absence of a specific definition for "misleading," "[i]t is a settled principle of interpretation that,

absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses." *Universal Health Services, Inc. v. U.S.*, 136 S. Ct. 1989, 1999 (2016). One of those well-settled principles is that an advertising claim can be misleading even if "although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams v. Gerber Prods. Co*., 552 F. 3d 934, 938 (9th Cir. 2008). This understanding accords with how the FDA understands standalone, protein quantity claims made outside the NFP: they are true but misleading without additional context for products that consist of low quality proteins. Plaintiff's claims directly align with that understanding and therefore are not preempted.

### iii.    Plaintiff's deception claim here is different from the one in Chong.

KIND also tries to argue express preemption based on *Chong* by mischaracterizing the new misleading-by-omission claims as one-and-the-same as the front label claim that the Court previously dismissed in *Chong*. For example, KIND argues that the new claim alleges that the front label "is deceptive because it is a statement of total protein—and not just complete protein." MTD at 8. It also argues its front label is based on the nitrogen method, and that Plaintiff's misleading-by-omission claims here should be preempted based on *Chong*'s holding that "a correct reading of the regulations establishes that producers may state grams of protein even outside the Nutrition Facts panel calculated by the nitrogen method, and without adjustment for digestibility." MTD at 9.

The entire argument is wrong-headed. Plaintiff does not allege that the front label claims were misleading because they were not adjusted for digestibility, nor does he challenge the methodology KIND used to calculate its front label claims. Rather, Plaintiff *in this case* alleges that KIND's label is misleading because KIND did not follow the rules and put a %DV in the NFP, which would have revealed that the products have low quality proteins that provide less of the daily value of protein than other comparable products. The problem, here, has to do with the ***absence*** of information that the FDA ***requires*** to give consumers further context about the amount of protein advertised on the front label; not the methodological challenges that the *Chong* plaintiffs alleged made the claim there misleading.

### 2.   The misleading-by-omission claims are not impliedly preempted.

KIND asks this Court to extend the holding in *Buckman*, 531 U.S. at 353 to impliedly preempt ***not only*** Plaintiff's claims based on the Sherman Law (which incorporates the FDCA by reference and were what *Chong* analyzed) ***but also*** plaintiffs' misleading-by-omission claims based on traditional California false advertising laws—the UCL, CLRA, FAL, and fraud—all of which predate the FDCA and are wholly independent of it. MTD at 5–8. No interpretation of *Buckman* can stretch so far—not even the one in *Chong*, which is already broader than ***any*** other court in this District. The Court should decline KIND's invitation to extend it further.

*Buckman* stands for a simple rule: the FDCA impliedly preempts any state law that attempts to privately enforce the provisions ***of the FDCA itself***. *Chong*, 585 F. Supp. 3d at 1219. In *Chong*, this Court held that *Buckman* preempted claims brought under California's Sherman law because it incorporates the FDCA by reference, but the Court also held that *Buckman* ***would not*** preempt "pre-existing, traditional state tort law claims." *Id*. This is because "*Buckman* … left the door open to state-law claims 'parallel' to federal requirements." *McClellan v. I-Flow Corp*., 776 F.3d 1035, 1040 (9th Cir. 2015); *accord Chong*, 585 F. Supp. 3d at 1219 ("[P]laintiffs are correct that the FDCA does not preempt preexisting state common-law duties that 'parallel federal requirements.'"). As a result, the Ninth Circuit has explicitly held that the combination of express and implied preemption leaves a "narrow gap" through which mislabeling claims may pass. "The plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted []), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013). Plaintiff easily passes through that gap here.

*Buckman* is inapplicable because Plaintiff's misleading-by-omission claims do not seek to privately enforce the FDCA, but to enforce California's independent, pre-existing, traditional prohibitions on misleading advertising that, in this instance, create a %DV disclosure duty that parallels FDCA requirements. Courts have long recognized that "traditional claims of consumer misrepresentation [are] not an attempt to enforce the FDCA's labeling requirements." *Jovel v. I-Health, Inc.*, No. 12-CV-5614 (JG), 2013 U.S. Dist. LEXIS 139661, at *14 (E.D.N.Y. Sep. 27, 2013);

*see also City & Cty. of S.F. v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 665 (N.D. Cal. 2020) (finding that the "false advertising [claims] … are traditional state law claims that exist independent of Defendants' duties under [federal law] and its implementing regulations"); *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 98752, at *49–50 (N.D. Cal. July 12, 2013) (holding that "Plaintiff's FAL, CLRA, and UCL fraud and unfair prong claims . . . are not impliedly preempted"); *Jackson v. Balanced Health Prods.*, No. C 08-05584 CW, 2009 U.S. Dist. LEXIS 48848, at *11 (N.D. Cal. June 10, 2009) (holding that *Buckman* did not impliedly preempt plaintiffs' misleading advertising claims and rejecting idea that such claims were only attempts to enforce the FDCA). The state laws that Plaintiff sues under—unfair competition, false advertising, and common law fraud—"rely[] on traditional state tort law which had predated the federal enactments in question" and, therefore, avoid preemption under *Chong*.[2] 585 F. Supp. 3d at 1219. Although these types of claims relate to "the products' labeling and may touch on an area regulated by the FDA, consumer protection claims founded on [the label's] falsity are not preempted." *Jovel*, 2013 U.S. Dist. LEXIS 139661, at *15. This is because "[t]he gravamen of these claims" is that the defendant's labels "are likely to deceive reasonable consumers. Thus, with respect to these claims, Plaintiff is not 'suing *because* Defendant's labeling violates the FDCA,' but rather because Defendant's labeling is allegedly deceptive and misleading in violation of California law." *Kane*, 2013 U.S. Dist. LEXIS 98752, at *50; alterations omitted).[3]

KIND essentially argues that there is no gap by which a plaintiff could ever avoid preemption since "regardless of how plaintiff attempts to spin the claims or under what legal theory, the primary legal issue in this case is whether plaintiff is permitted to privately enforce FDA regulations" because even the misleading-by-omission claims "allege non-compliance with 21 C.F.R. § 101.9(c)(7)(1)." MTD at 5. Yet, as the Ninth Circuit recognizes, showing non-compliance with FDCA regulations is

---

[2] The fact that Plaintiff brings some statutory tort claims does not change the analysis since they also predate the NLEA. California first enacted the UCL in 1933. *See* 1933 Cal. Stat. 2482. It enacted the FAL in 1941. *See* 1941 Cal. Stat. 727. It enacted the CLRA in 1990. *See Fairbanks v. Superior Court*, 46 Cal.4th 56, 59 (2009). Congress did not pass the NLEA until 1990. *See Lockwood v. Conagra*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009).

[3] Judge Koh ultimately vacated the *Kane* decision, but for reasons unrelated to the preemption decision. The rationale of the preemption ruling remains sound and applicable here.

a necessity—Plaintiff *must* establish that Defendant's conduct "violates the FDCA," to escape express preemption. *Perez*, 711 F.3d at 1120. It would be perverse if avoiding express preemption automatically subjected a plaintiff to implied preemption. Indeed, if Defendant were correct that alleging non-compliance with a regulation is an attempt to privately enforce the FDCA, then ***no claim*** could ever escape some form of preemption, which is clearly not the law. Instead, as the Ninth Circuit has held, a state law claim is not preempted where it "rests on a state-law duty that parallels a federal-law duty under the [FDCA]." *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1233 (9th Cir. 2013) (*en banc*). That is precisely the circumstance here. Plaintiff's false advertising claims are based on state law duties to avoid misleading consumers; these duties are entirely independent of the FDCA, although they do ultimately impose the same requirements as those within the federal regulatory scheme. Indeed, even if the FDCA went up in a puff of smoke tomorrow, Plaintiff could still bring his deception-by-omission claim since he could still allege that omitting the %DV is misleading. Since the new deception claim "arise[s] out of the alleged deceit practiced on consumers" and does "not arise 'solely by virtue of' noncompliance with [FDA] rules," implied preemption is inapplicable even under *Chong*. *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 995 (N.D. Cal. 2018). As a result, Plaintiff's misleading-by-omission claims are neither impliedly nor expressly preempted.

### B.   Plaintiff's Other Unlawful Prong Claims are Not Impliedly Preempted.

Plaintiff also asserts two claims under the unlawful prong of the UCL alleging that KIND unlawfully (1) omitted the %DV in violation of § 101.9(c)(7)(i), and (2) put a protein claim on the products' front labels even though §§ 101.9(c)(7)(i), 101.13(b), and (n) prohibited KIND from doing so. Though the Court is likely to follow its implied preemption holding in *Chong*, there are compelling reasons for the Court to reevaluate that holding.

"[C]ourts in this District . . . routinely reject the argument that the Court's reasoning in *Buckman* justifies preemption of food labeling claims under the Sherman Law." *Vassigh v. Bai Brands LLC*, No. 14-cv-05127-HSG, 2015 U.S. Dist. LEXIS 90675, *12–13 (N.D. Cal. July 13, 2015). In fact, as detailed below, ***every other judge in this District*** to consider the issue has held that *Buckman* does not preempt UCL unlawful prong claims predicated on violations of the Sherman

Law.[4] This includes judges who considered the exact same unlawful prong claims at issue here. *See Van's I*, 2022 U.S. Dist. LEXIS 84477, at *21–23 (Orrick, J.); *Pino*, 2022 U.S. Dist. LEXIS 180804, at *11–12 (Hixson, J.); *Perfect Bar*, 2022 U.S. Dist. LEXIS 159762, at *14 (Corley, J.); *REBBL*, 2023 U.S. Dist. LEXIS 16166, at *12–13 (White, J.); *Swartz*, No. 4:21-cv-10053-YGR, ECF No. 46 at 4–5 (Gonzalez Rogers, J.). These decisions are well founded.

*Buckman*'s implied preemption doctrine is a form of conflict preemption that applies where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *McClellan*, 776 F.3d at 1039; *accord Buckman*, 531 U.S. at 352 (holding its decision is based on "conflict pre-emption"). *Buckman* held that a "state-law fraud-on-the-FDA claim" was preempted because it conflicted with provisions of "the federal statutory scheme [that] amply empower[] the FDA to punish and deter fraud against the Agency" itself. 531 U.S. at 348.

But as the Supreme Court has held, "[p]rivate remedies that enforce federal misbranding requirements would seem to aid, rather than hinder" the accomplishment of federal objectives. *Bates*, 544 U.S. at 451; *accord Medtronic*, 518 U.S. at 495 ("[A] damages remedy . . . merely provides another reason for manufacturers to comply with identical existing 'requirements' under federal law."). As such the Ninth Circuit has long-recognized that "*Buckman* . . . left the door open to state-law claims 'parallel to federal requirements.'" *McClellan*, 776 F.3d at 1040. In other words, "[s]tates are generally free to enact statutes that parallel the requirements of federal law and to provide for private enforcement of those parallel obligations." *Vassigh*, 2015 U.S. Dist. LEXIS 90675, at *14. "That is exactly what California has chosen to do with respect to the federal food labeling requirements at issue here. The Sherman law expressly adopts the requirements of the FDCA as obligations under California law, and California law further provides a mechanism for private parties

---

[4] *See De Keczer v. Tetley USA, Inc*., No. 5:12-CV-02409-EJD, 2014 U.S. Dist. LEXIS 121465, at *16–17 (N.D. Cal. Aug. 28, 2014) (Davila, J.); *Hendricks v. StarKist Co*., 30 F. Supp. 3d 917, 926 (N.D. Cal. 2014) (Gonzalez Rogers, J.); *Ross v. Clover Stornetta Farms*, No. C-13-01517 EDL, 2014 U.S. Dist. LEXIS 5408, at *27–28 (N.D. Cal. Jan. 14, 2014) (Laporte, J.); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178, at *24–27 (N.D. Cal. Oct. 2, 2013) (Koh, J.); *Sciortino v. PepsiCo, Inc*., 108 F. Supp. 3d 780, 807–08 (N.D. Cal. 2015) (Chen, J.); *Vassigh*, 2015 U.S. Dist. LEXIS 90675, at *12–16 (Gilliam, J.); *Swearingen v. Santa Cruz Nat., Inc*., No. 13-cv-04291-SI, 2016 U.S. Dist. LEXIS 109432, at *20 (N.D. Cal. Aug. 17, 2016)**Error! Bookmark not defined.** (Illston, J.); *Clancy v. Bromley Tea Co*., 308 F.R.D. 564, 575 (N.D. Cal. 2013) (Tigar, J.); *Samet v. P&G*, 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432, at *23–24 (N.D. Cal. June 18, 2013) (Grewal, J.).

to enforce those obligations through the 'unlawful' prong of the UCL." *Id.* (internal citations omitted); *see also Trazo v. Nestlé USA, Inc.*, No. 5:12-CV-2272 PSG, 2013 U.S. Dist. LEXIS 113534, at *20–21 (N.D. Cal. Aug. 9, 2013).

In *Chong*, this Court held that Plaintiff's claims alleging violations of the Sherman Law were impliedly preempted because the Sherman law "is entirely ***dependent*** upon the FDCA in that it expressly adopts the FDCA and regulations as state law." 585 F. Supp. 3d at 1220 (emphasis added). However, the fact that the Sherman Law incorporates the FDA regulations by reference does not mean it ***depends*** upon federal law to exist. Instead, the underlying authority on which the Sherman Law depends to regulate labels is the state's traditional police powers over food labeling—not the FDCA. *See Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have plenary control, and the power to legislate in respect to which . . . it is the protection of the people against fraud and deception in the sale of food products."). If the FDCA did not exist, California could still have the exact same food labeling scheme it does now—it would simply have to write all those regulations out word for word, rather than incorporate by reference the words stated in the federal regulations. *See Clancy*, 308 F.R.D. at 574 ("The Sherman Law . . . exists independently of [the FDCA], and violating its requirements would be a valid state cause of action even if the FDA ceased to exist."). Indeed, the fact that the Sherman Law "incorporates the FDCA requirements by reference . . . results from consideration of practicalities" not because it depends on the FDCA as its source of authority to regulate food labels. *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1084–85 (C.D. Cal. 2017). "If California were required to update its statutes every time the federal government changed a standard, it would constantly have statutes stating standards that did not mirror the federal scheme, which would then be expressly preempted by Section 343-1(a)." *Id.* But there is no reason to treat "listing out each individual requirement of the statute line-by-line" any "differently than incorporated language," which is nothing more than a "legislative space saving technique." *Vassigh*, 2015 U.S. Dist. LEXIS 90675, at *12–16. Either way, the state's authority to regulate labels remains the same and in no way derives from the FDCA itself.

If there were any doubt about the application of *Buckman* and implied preemption here, the presumption against preemption should put it to rest. In any preemption analysis, a court must "start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic*, 518 U.S. at 485 (internal quotation marks omitted). This approach "is consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety." *Id.* Therefore, "[p]arties seeking to invalidate a state law based on preemption 'bear the considerable burden of overcoming th[is] starting presumption that Congress does not intend to supplant state law.'" *Stengel*, 704 F.3d at 1227–28 (quoting *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)).

In *Buckman*, the Court explicitly held that the presumption against preemption did not apply because the plaintiffs' "fraud-on-the-FDA" claim did not implicate "a field which the States have traditionally occupied . . . such as to warrant a presumption against finding federal pre-emption of a state-law cause of action." 531 U.S. at 347 (internal quotation marks and citation omitted). By contrast here, in the context of food labeling, there is a strong presumption against preemption because the regulation of health and safety, including laws regulating the proper marketing of food, are traditionally within states' historic police powers. *See Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders"); *see also Van's I*, 2022 U.S. Dist. LEXIS 84477, at *19. This presumption against preemption leads to the conclusion that claims that lie in the historic police power of the state do not run afoul of a federal enactment. Here, unlike in *Buckman*, the presumption holds strong.

In sum, Plaintiff's UCL unlawfulness claims predicated on the Sherman Law are independent state law claims that parallel the federal regulations. And Congress explicitly left the door open to these types of state law claims and opted to forego an express preemption clause that occupies the entire field of food labelling so that consumers could pursue state law claims to remedy injuries that result from misbranded foods. *See Medtronic*, 518 U.S. at 474. ("[T]he purpose of Congress is the ultimate touchstone in every pre-emption case."). Thus, the Court should revisit its *Chong* conclusion and join the majority of courts in this District to find that Plaintiffs' claims are not preempted.

**C.      KIND's Plausibility Challenge to the Misleading-By-Omission Claim Is Baseless.**

KIND argues that no reasonable consumer would read front label claims like "6g protein" to reflect "'6g usable protein,' '6g complete proteins,' or '6g nutritionally available protein,'" but that flips the pleading standard on its head.[5] MTD at 11. Plaintiff specifically alleges that reasonable consumers have no reason to assume that *any* portion of the advertised protein is *not* "useable." For example, he alleges that "consumers are generally unaware about the usability of various proteins" and that "[r]easonable consumers are unaware of the nutritional value of various protein sources and upon seeing a front-label quantitative protein claim reasonably believe that all the advertised protein will be nutritionally available—i.e. that the product contains high quality proteins." Compl. ¶¶ 7, 48. The Court *must* "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party" in deciding a motion to dismiss. *Retail Prop. Trust v. United Broth. of Carpenters*, 768 F.3d 938, 945 (9th Cir. 2015). KIND asks the Court to ignore these allegations, and, instead, draw inferences *against* Plaintiff to assume that consumers know that not all proteins are the same, and that "6g protein" does not mean "6g useable protein." It cannot do so.

Regardless, reasonable consumer deception is a question of fact, inappropriate for resolution at the motion to dismiss stage, absent "rare situations" where the violation is definitively implausible. *Williams*, 552 F. 3d at 938. This is not one of those "rare" cases. Plaintiff alleges that KIND's claims "misled reasonable consumers into believing that a serving of the Products will provide the grams of protein represented on the label, when that is not true." Compl. at ¶ 20. Moreover, because the %DV is designed to provide consumers insights into the quality of the protein (i.e., how much protein is actually useable by the human body), the %DV "would have revealed that the Products provide significantly less of the daily value of protein than high quality protein products with comparable protein quantities." *Id*.

As noted above, the FDA has long recognized that even truthful, quantitative nutrient content claims can mislead consumers about how the quantity of that nutrient fits into their dietary needs. 56

---

[5] This argument applies only to the misleading-by-omission claims. Plaintiff's unlawfulness claims do not turn on deception. *See Bruton v. Gerber Prods. Co.*, No. 15-15174, 2017 U.S. App. LEXIS 12833, at *6–7 (9th Cir. July 17, 2017) (unpublished); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014).

Fed. Reg. 60421, 60426. And, in enacting § 101.9(c)(7), the FDA explicitly stated that "[i]nformation on protein quantity alone can be misleading on foods that are of low protein quality." 58 Fed. Reg. 2079 at 2101–2. It requires the %DV anytime a protein claim is made to remedy that problem. *Id.* The %DV, in particular, is designed to ensure that consumers can "judge the usefulness of a food in meeting overall daily nutrient requirements or recommended consumption levels and to compare the nutrient contributions of different foods." 55 Fed. Reg. 29476. Omitting the %DV prevents consumers from comparing the true value of the protein in the exact manner FDA envisioned. Thus, even if a pure quantity statement is not in and of itself false, it is misleading in the absence of a statement of the "corrected amount of protein" when the product consists of low quality proteins, as is the case here. *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (recognizing consumers can be deceived by "not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public"); *accord Williams*, 552 F.3d at 938 (same).

KIND's reliance on *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) is misplaced. *Moore* involved a "100% Manuka Honey" claim that the plaintiff alleged was misleading because it consisted of only 57.3-62.6% Manuka flower nectar. *Id*. at 876. No reasonable consumer could have thought it consisted solely of Manuka nectar because "it is impossible to produce honey that is derived exclusively from a single floral source." *Id*. at 883–4. Here, by contrast, some products, specifically those that consist entirely of high quality proteins can provide the full amount of protein advertised, even if it is a nitrogen-based quantity number. The problem arises when a product consists of low-quality proteins like KIND's. In that scenario, because "reasonable consumers are unaware of the nutritional value of various protein sources," "seeing a front-label quantitative protein claim" leads them to "reasonably believe that all of the advertised protein will be nutritionally available—i.e., that the product contains high quality proteins." Compl. ¶ 48. The %DV would have revealed that is not true. *Id*. ("a %DV would have revealed that the Products provide significantly less of the daily value of protein than high quality protein products with comparable protein quantities.").

The Ninth Circuit also found other representations on the label undermined any belief that the product contained pure Manuka honey. In particular, the product had a "10+" sticker that

"represent[ed] the honey's rating on the UMF scale." *Moore*, 4 F.4th at 884. Because the "UMF grading scale reflects a Manuka honey product's concentration of honey derived from Manuka flower nectar and ranges from 5+ to 26+," the front label's "10+" representation would have put consumers on notice that the honey "was decidedly on the lower end of the 'purity' scale." *Id*. at 885. There is no such information on the labels here that would give consumers *any* insight into the quality of protein. *Moore*'s findings do not apply to this case.

### D.    KIND's Other Arguments are Without Merit.

#### 1.    Plaintiff adequately alleges reliance.

Plaintiff also alleges reliance on both the misleading statement at issue (i.e., the front label protein claim) and the omitted information (i.e., the %DV). *See Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2022 U.S. Dist. LEXIS 20671, at *19 (N.D. Cal. Feb. 4, 2022) ("[P]laintiffs are required to plead and prove that they actually relied on the statement at issue.").

A consumer establishes reliance on a misleading statement "by alleging . . . that he or she would not have bought the product but for the misrepresentation." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) (omitting internal quotations). Plaintiff alleges that he purchased the bars "after reading and relying on" the front label protein claims. Compl. at ¶ 59. He "believed the truth of each representation, i.e., that the product would actually provide the full amount of protein claimed on the front labels in a form human bodies could utilize." *Id*. He further alleges that had KIND "not made the protein claims on the front of its packages, he would not have been drawn to the Products and would not have purchased them." *Id*. These allegations are virtually identical to those Judge Orrick found to provide "ample allegations" to establish reliance. *Van's II*, 2022 U.S. Dist. LEXIS 154627, at *14.

Plaintiff also alleges reliance on the omitted %DV. A plaintiff establishes reliance on an omission by alleging that "had the omitted information been disclosed, [he or she] would have been aware of it and behaved differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *see also Zeiger v. WellPet LLC*, 526 F. Supp. 3d 685 (N.D. Cal. 2021). KIND argues that Plaintiff's reliance allegations are deficient because he "does not even mention the %DV as part of plaintiff's

purchasing decision."[6] MTD at 12. That is plainly not true. Plaintiff alleges that he would have been aware of the %DV had it been provided because he "looked at and read the NFP on the KIND Dark Chocolate Nuts & Sea Salt and Peanut Butter Dark Chocolate bars before purchasing them for the first time" and "regularly checks the NFP before purchasing any product for the first time, including the %DV column for protein when manufacturers provide it." Compl. at ¶ 60. He also alleges he would have behaved differently by not purchasing the Products or paying less had the %DV been disclosed. *Id*. at ¶¶ 60–61. Judge Orrick similarly found that these allegations "plausibly allege[]" reliance on the NFP. *Van's II*, 2022 U.S. Dist. LEXIS 154627, at *18. Judges Corley, Gonzalez Rogers, and Hixson did as well. *See Pino*, 2022 U.S. Dist. LEXIS 180804, at *8–9; *Swartz*, No. 4:21-cv-10053-YGR, ECF No. 46 at 3; *Perfect Bar*, 2022 U.S. Dist. LEXIS 159762, at *11. The same allegations suffice here too.

KIND primarily disputes the reasonableness of Plaintiff's reliance on the front label protein claim, which, as explained above, is a fact issue inappropriate for resolution at this stage. *See e.g., Van's II*, 2022 U.S. Dist. LEXIS 154627, at *19 ("Reasonableness of reliance is ordinarily a question of fact."). Regardless, the argument improperly assumes consumers know about the complexities of protein digestibility, essential amino acid profiles, and that because of those things, not all proteins can be fully utilized in the human body. The Complaint does not allege anything close to that.

Indeed, nothing in the Complaint states or suggests that ***all*** plant-based proteins are not fully digestible and that he would therefore automatically know that KIND's "plant-based" protein was not high quality. The Complaint itself acknowledges that, while rare, some plant-based proteins include all the necessary amino acids. Compl. ¶ 30 ("Although some plants can be high quality protein sources, most plant based proteins do not contain all nine essential amino acids"). But as explained in the Complaint, consumers "would not know the quality of protein in the Products or how much of the daily recommended value of protein they provide merely by looking elsewhere on the product package." *Id*. ¶ 49. Instead, figuring that out "requires investigation well beyond the grocery store

---

[6] KIND suggests that Plaintiff could not establish reliance as a matter of law because he bought the products "despite the alleged absence of this information." MTD at 12. If that were true, omissions cases could not exist. The law recognizes this and requires only a showing that a plaintiff would have behaved differently "had the omitted information been disclosed." *Daniel*, 806 F.3d at 1225.

aisle and knowledge of food chemistry beyond that of the average consumer." *Id.* Nothing in the Complaint suggests that Plaintiff—or consumers generally—remotely had this ability.

KIND's argument asks the Court to draw inferences against Plaintiff and to treat as false his specific allegations that he (or other typical consumers) lacked such knowledge. That is something the Court has no power to do since, at the motion to dismiss stage, the court must "assume [the plaintiff's] allegations to be true and draw all reasonable inferences in [her] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). When confronted with a similar argument contesting the reasonableness of a plaintiff's reliance, Judge Orrick was "not convinced" that it rendered the plaintiff's "reliance on the front-label claim unreasonable as a matter of law." *Van's II*, 2022 U.S. Dist. LEXIS 154627, at *21. As in *Van's II*, KIND's argument here "simply stretches too far." *Id.*

### 2.    Plaintiff's economic harm suffices for Article III and statutory standing.

Plaintiff has alleged an injury-in-fact from KIND's misleading front label representations and the omission of the %DV. KIND contends that Plaintiff failed to allege an injury-in-fact sufficient for standing, citing to the Supreme Court's decision in *Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). MTD at 13. This Court similarly concluded that "[d]ismissal likely would also be warranted on grounds that plaintiffs have not alleged a cognizable injury arising from the omissions." *Chong*, 585 F. Supp. 3d at 1220, n.1. But, unlike *Transunion*, Plaintiff does more than allege "bare procedural violation[s], divorced from any concrete harm." *TransUnion*, 141 S. Ct. at 2213. He alleges that he paid more money than he would have paid had Defendant complied with the law and either not made a protein claim or disclosed the %DV. Compl. at ¶ 60; *compare Transunion*, 141 S. Ct. at 2199. When, as here, a plaintiff alleges he or she paid more money "than he or she otherwise would have," as a result of the defendant's conduct, then he or she has standing under both the UCL and Article III. *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885–87 (Cal. 2011) (UCL standing also satisfies Article III); *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (spending more money is a "quintessential injury-in-fact").

Other courts to evaluate nearly identical claims agree. *See e.g.*, *Van's I*, 2022 U.S. Dist. LEXIS 84477, at *24–25 (plaintiffs "pleaded a particularized allegation of harm: [they] allege[] that

[they] paid a specific amount of money that [they] would not have paid but for [the] front-label protein claim on the Products" so they "alleged a cognizable injury sufficient to show Article III standing.").

### 3.     Plaintiff has standing to pursue injunctive relief.

KIND argues that Plaintiff lacks standing to seek an injunction because he is aware of the labelling deficiencies and purportedly does not allege an intent to purchase the products in the future. MTD at 14. Judges Orrick, Hixson, White, and Gonzalez-Rogers rejected both arguments. *See Van's I*, 2022 U.S. Dist. LEXIS 84477, at *29–31; *Pino*, 2022 U.S. Dist. LEXIS 180804, at *7; *REBBL*, 2023 U.S. Dist. LEXIS 16166, at *7; *Swartz*, No. 4:21-cv-10053-YGR, ECF No. 39 at 5.

As to the first, the Ninth Circuit has held that a "previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false." *Davidson*, 889 F.3d at 969. The ability to fact-check a claim by looking at the back does not change the injury a plaintiff plausibly suffers when confronting front labels while shopping. *See Ries v. Arizona Iced Tea*, 287 F.R.D. 523 (N.D. Cal. 2012) (allowing plaintiffs to seek an injunction against the "All Natural" representations even though high fructose corn syrup and citric acid, the ingredients that rendered the "all natural" claim false and misleading, were listed on the products' ingredient list) (cited with approval in *Davidson*, 889 F.3d at 969 (holding that plaintiff's ability to check the amount of added sugar on the NFP did not preclude the possibility that the plaintiff could be misled by statements on the front label); *Harris v. McDonald's Corp.*, No. 20-cv-06533-RS, 2021 U.S. Dist. LEXIS 103615, at *7 (N.D. Cal. Mar. 24, 2021) (Seeborg, J.) (rejecting standing challenge based on plaintiff's knowledge of defendant's deception).

As to the second, Plaintiff has adequately alleged an intent to purchase the products in the future. He alleges that he continues to desire to purchase the Products, would likely purchase the Products again if the Products were relabeled or reformulated to contain the amount of useable protein represented on the label, and that she regularly visits stores where the Products are sold.[7] Compl. at ¶ 62. This suffices to confer standing, as confirmed by the Ninth Circuit in *Davidson*. *See* 889 F.3d

---

[7] KIND's claim that relabeling would require KIND to make "protein claims that are inconsistent with FDA regulations" is wrong. MTD at 14. KIND could remove the front label protein claims or add the %DV as is required under §101.9(c)(7)(i). Neither is "inconsistent" with FDA regulations.

at 966–72 (plaintiff properly alleged a "threat of imminent or actual harm by not being able to rely on [the] labels in the future" that is "sufficient to confer standing to seek injunctive relief"); *see also Van's I*, 2022 U.S. Dist. LEXIS 84477, at *30–31 ("[But 'reformulated' may mean that the Products are relabeled, not that the ingredient composition is altered. In this light, Brown's allegation satisfies *Davidson*'s first example of future harm."). Defendant's reliance on *Lanovaz v. Twinnings N. Am., Inc.*, 726 F. App'x 590 (9th Cir. 2018) is misplaced because it involved a plaintiff who *testified* that he would not purchase the product again.

### 4.    Plaintiff has standing to sue for substantially similar products.

KIND argues that Plaintiff lacks standing as to the unpurchased products. MTD at 15–16. Even courts that construe the issue as one of standing (as opposed to typicality) including this Court still allow class claims to proceed as to unpurchased products so long as the claims are substantially similar. *See Davidson v. Sprout Foods Inc.*, No. 22-cv-01050-RS, 2022 U.S. Dist. LEXIS 121893, at *7–8 (N.D. Cal. July 11, 2022) (Seeborg, J.). Plaintiff easily satisfies the test here. He alleges the same misleading claim with respect to all products—i.e., that the front label protein claim misleads consumers due to a failure to include a %DV in the NFP. Plaintiff alleges that none of the products consisted of high quality proteins and that the inclusion of a %DV would have revealed that material fact to consumers. Compl. at ¶¶ 7, 30-1; *see also Gitson v. Trader Joe's Co.*, 63 F. Supp. 3d 1114, 1117 (N.D. Cal. 2014). Plaintiff also alleges that all products were identical in the ways that are critical for the claims here—i.e., that all products made a protein claim on the front, and all failed to provide a %DV in the NFP. *See* Compl. at ¶¶ 17–20. As Judge Gonzalez Rogers recently held, "The products uniformly include incomplete proteins and the packaging uniformly fails to alert consumers about protein quality." *Swartz*, No. 4:21-cv-10053-YGR, ECF No. 46 at 7. Accordingly, resolving "the asserted claims will be identical between the purchased and unpurchased products" as for all of Plaintiff's claims. *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2014 U.S. Dist. LEXIS 34443, at *8 (N.D. Cal. Mar. 13, 2014); *see also Davidson*, 2022 U.S. Dist. LEXIS 121893, at *7–8; *REBBL*, 2023 U.S. Dist. LEXIS 16166, at *8–9. "Any significant differences can be addressed at class certification." *Swartz*, No. 4:21-cv-10053-YGR, ECF No. 46 at 7.

### 5.     Plaintiff may assert an unjust enrichment claim.

KIND challenges Plaintiff's unjust enrichment claim with the often repeated, but almost invariably rejected, argument that there is not a "separate cause of action for unjust enrichment" in California. MTD at 16. But "standalone" unjust enrichment claims are permitted in California under certain circumstances. *See Penikila v. Sergeant's Pet Care Prods., LLC*, 442 F. Supp. 3d 1212, 1215 (N.D. Cal. 2020) (denying motion to dismiss plaintiff's claim for unjust enrichment when presented with the same argument); *see also Bruton v. Gerber Products Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (independent claims for unjust enrichment can proceed). Even where courts have found no standalone claim, they still "construe the cause of action as a quasi-contract claim seeking restitution." *Locklin v. StriVectin Operating Co.*, No. 21-cv-07967-VC, 2022 U.S. Dist. LEXIS 52461, at *7–8 (N.D. Cal. Mar. 23, 2022); *Astiana v. Hain Celestial Grp., Inc*., 783 F. 3d 753, 762 (9th Cir. 2015) (stating that courts can construct "unjust enrichment" claims as a quasi-contract claim seeking restitution). And finally, a plaintiff is "permitted to plead an unjust enrichment claim in the alternative." *Loop AI Labs, Inc. v. Gatti*, No. 15-cv-00798-HSG, 2015 U.S. Dist. LEXIS 117268, at *23 (N.D. Cal. Sep. 2, 2015). Indeed, the Ninth Circuit has specifically held that a district court errs when it dismisses an "unjust enrichment" claim as "duplicative of or superfluous of" other claims. *Astiana*, 783 F.3d at 762–63.

### E.     Plaintiff Requests Leave to Amend If Necessary.

If a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys*., 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find the Complaint insufficient, Plaintiff requests leave to amend.

Dated: March 3, 2023.

**GUTRIDE SAFIER LLP**

*s/ Seth A. Safier*
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff*