**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS GUERRA, an individual, on behalf of herself, the general public, and those similarly situated, | Case No. 3:22-cv-06654-RS |
| Plaintiff, | **PLAINTIFF'S SURREPLY TO DEFENDANT'S MOTION TO DISMISS** |
| v. | Hon. Richard Seeborg |
| KIND, LLC, | Hearing Date:     April 13, 2023<br>Hearing Time:    1:30 p.m.<br>Courtroom:        3, 17th Floor |
| Defendant. | |

## I.   INTRODUCTION

Defendant KIND, LLC's ("KIND") reply brief came on the heels of a decision from Judge Chhabria that forecloses KIND's preemption arguments as to the misleading-by-omission claim in this case. KIND based its express preemption argument as to the misleading-by-omission claim on Judge Chhabria's opinion in *Nacarino v. Kashi Co.*, 584 F. Supp. 3d 806, 810 (N.D. Cal. 2022). It specifically quoted *Nacarino* to argue that the fact the "FDA requires manufacturers to provide a PDCAAS-adjusted percent daily value figure 'elsewhere on the packaging… does not mean that statements of protein quantity would be misleading without this additional context.'" (ECF 19 at 9), (quoting *Nacarino*, 584 F. Supp. 3d at 810.). Shortly after Plaintiff filed his Opposition brief, however, Judge Chhabria revisited this issue in-depth and concluded that "that part of *Nacarino* was (with apologies) wrong. The better reading of the FDA's regulations is that prominently advertising a product's protein quantity outside of the nutrition facts panel *is* misleading (within the meaning of the [FDCA] and the FDA's regulations) if the manufacturer doesn't include the quality-adjusted percent in the nutrition facts panel," and thus a misleading-by-omission claim based on the missing %DV is not expressly preempted. *Rausch v. Flatout, Inc.*, No. 22-cv-04157-VC, 2023 U.S. Dist. LEXIS 39231, at *12 (N.D. Cal. March 8, 2023).

In an effort to explain away *Rausch*, KIND's reply raises a host of new arguments as to why the misleading-by-omission claim still should not proceed. In doing so, it makes its Catch 22 view of preemption abundantly clear. Under KIND's reasoning, any claim that survives express preemption because it parallels FDA regulations is nonetheless impliedly preempted as a purported attempt at "private enforcement of [those] FDA regulations." (ECF 24 at 1). No claim can survive. But this Court rejected such an expansive interpretation in *Chong*. It held that a "narrow gap" exists between express and implied preemption, and that claims based on "pre-existing, traditional state tort law" thread that gap. *See Chong v. KIND, LLC*, 585 F. Supp. 3d 1215, 1219 (N.D. Cal. 2022).

Plaintiff's misleading-by-omission claim under California's consumer protection statutes is the precise type of traditional, state law tort claim that parallels federal requirements and therefore threads the "narrow gap" between express and implied preemption; it must proceed. Numerous courts agree. *E.g.*, *Loreto v. P&G*, 515 F. App'x 576, 579 (6th Cir. 2013) (plaintiffs' deception "claims under

state consumer-protection laws" rely "solely on traditional state tort law predating the FDCA, and would exist in the absence of the Act"); *Dumont v. Reily Foods Co.*, 934 F.3d 35, 42 (1st Cir. 2019) (food mislabeling claims under state false advertising laws were not impliedly preempted because plaintiff was not suing "because the label violates the FDCA, but rather because it independently violates Chapter 93A['s]" prohibition on misleading advertising). KIND's new arguments to avoid that obvious conclusion ignore the differences between Plaintiff's misleading-by-omission claim and the claim at issue in *Chong*, the fact that common law imposes a duty to disclose when a party conceals material information as KIND has done here, and the fact that the %DV is designed to put misleading advertisements into context.  The Court should deny KIND's Motion to Dismiss.

## II.   ARGUMENT

### A.   Plaintiff's Misleading-By-Omission Claims are Not Expressly or Impliedly Preempted Under *Chong*'s Analysis.

In its Motion to Dismiss, KIND argued that the misleading-by-omission claim was expressly preempted, relying primarily on Judge Chhabria's decision in *Nacarino*. KIND wrote

> As Judge Chhabria explained in *Nacarino*, because FDA requires manufacturers to provide a PDCAAS-adjusted percent daily value figure "elsewhere on the packaging . . . does not mean that statements of protein quantity would be misleading without this additional context." *Nacarino*, 584 F. Supp. 3d at 810 (emphasis added). Indeed, "[t]o hold otherwise would be to find that an FDA-approved protein measurement technique is inherently misleading. This is not a plausible interpretation of the regulations." *Id*. The purpose of the regulation providing for inclusion of the %DV in the Nutrition Facts is "not to remedy an otherwise misleading figure" on the front of the label. *Id*.

ECF 19 at 9-10.

After KIND filed its Motion to Dismiss in this case and Plaintiff had filed her opposition, Judge Chhabria concluded that the portion of *Nacarino* on which KIND relied "was (with apologies) wrong." *Rausch*, 2023 U.S. Dist. LEXIS 39231, at *12. *Rausch* involved the exact same misleading-by-omission claim at issue here, and the defendant made an identical argument that the claim was expressly preempted based on *Nacarino*'s %DV discussion. Since *Nacaranio* did not involve an omission claim, Judge Chhabria acknowledged his discussion of the %DV in that case was dicta, and so re-assessed the issue in-depth. He ultimately repudiated the dicta, explaining that "[t]he better reading of the FDA's regulations is that prominently advertising a product's protein quantity outside of the nutrition facts panel *is* misleading (within the meaning of the Food, Drug, and Cosmetic Act

and the FDA's regulations), if the manufacturer doesn't include the quality-adjusted percent in the nutrition facts panel." *Id*. at *12. His rationale for doing so turned on, among other things, the distinction between stating quantity in the NFP and advertising it on the front label. As he explained, it is "reasonable to think that small text in the nutrition facts panel is less likely to mislead a consumer than text advertising the protein content on the front of a label," "[w]hen a manufacturer chooses to emphasize a product's protein content elsewhere on a label, the manufacturer is implicitly suggesting that the product is a good source of protein" and "encouraging consumers to buy the product based off that feature." *Id*. at *12-*13. As a result, "the FDA's regulations are best understood as reflecting a determination that when a manufacturer emphasizes a product's protein content, that statement is misleading without including information about the product's protein quality on the nutrition facts panel." *Id*.

KIND writes off Judge Chhabria's analysis, contending it is "not persuasive" because it "contradicts the prior analysis of this Court (and others) in analyzing express preemption" and "allow[s] a plaintiff to use state law as a vehicle to impose a different requirement on food manufacturers—i.e., front-of-pack protein statement based on nitrogen method is misleading." ECF 24 at 8-9. The entire argument is meritless because it assumes the misleading-by-omission claim is ***the same*** claim that this Court found was expressly preempted in *Chong* (i.e., that the front label claim was misleading because the methodology KIND used (nitrogen testing) was misleading because it does not "adjust[] for 'digestibility.'") *See Chong*, 585 F. Supp. 3d at 217. ***It is not.*** As explained in Plaintiff's Opposition brief, the claim at issue in this case does not challenge the methodology KIND used on its front label. Rather, the claim here has to do with the ***omission*** of information that the FDA ***requires*** manufacturers to give in order to temper consumer expectations about a product's protein in light of protein advertisements. When a manufacturer voluntarily touts protein content on a product that consists of low quality proteins, yet fails to include the corrected amount of protein per serving expressed as a %DV, the ***omission*** renders the label misleading.

KIND's argument also misunderstands the requirements at issue. In promulgating §§ 101.9(c)(7)(i) and 101.13(n) & (b), FDA gives food manufacturers a choice: either advertise protein and include a %DV or do not advertise protein at all. Compl. ¶¶ 6, 36, 39. Plaintiff's state law claim

is exactly the same: KIND cannot advertise protein if it chooses not to put a %DV in the NFP. Contrary to KIND's assertions, the requirement is not that KIND cannot use nitrogen testing for its front label claims; rather, it is that it cannot advertise protein at all on the front label if it refuses to include a %DV in the NFP.

This distinction between the different claims bears out in the preemption analysis, as Judge Chhabria recognized in *Rausch*. By dismissing the claim alleging "that the protein statements are misleading because of the methodology Flatout uses to calculate the amount of protein in its products… for the reasons explained in *Nacarino*," yet allowing the misleading-by-omission claim to proceed since it was not expressly preempted, Judge Chhabria recognized that the new misleading-by-omission claim involves a fundamentally distinct theory of deception that is not preempted. *Rausch*, 2023 U.S. Dist. LEXIS 39231, at *6 n.2 - *19.  Other courts have followed the same path and allowed the misleading-by-omission claim to proceed but not claims challenging the use of nitrogen testing. *See e.g.*, *Lesh v. D's Naturals, LLC*, No. 22-cv-01036-HSG, 2023 U.S. Dist. LEXIS 43881, at *10-12 (N.D. Cal. Mar. 15, 2023) (denying a motion to dismiss on preemption grounds as to the misleading-by-omission claim but granting it as to the claim based on the misleading methodology); *Roffman v. REBBL, Inc.*, No. 22-cv-05290-JSW, 2023 U.S. Dist. LEXIS 16166, at *10-11 (N.D. Cal. Jan. 31, 2023) (same); *Pino v. Birch Benders, LLC*, No. 22-cv-02194-TSH, 2022 U.S. Dist. LEXIS 180804, at *10-12 (N.D. Cal. Oct. 3, 2022) (same).

KIND's only real basis for deviating from this analysis is to quote *Roffman v. Perfect Bar, LLC*, No. 22-cv-02479-JSC, 2022 U.S. Dist. LEXIS 159762, at *21 (N.D. Cal. Sep. 2, 2022), which relied on the now repudiated portion of *Nacarino* to find that the misleading-by-omission claim is expressly preempted. ECF 24 at 7-8. Conveniently, KIND omits from its brief *Roffman*'s citation to *Nacarino*. Given that the law on which *Roffman* relied is no longer good, and is, as Judge Chhabria put it, "wrong," the Court should ignore it. *Rausch* forecloses reliance on *Roffman* as well.

KIND's argument that Plaintiff has not cited to any law that would "permit plaintiff to overcome preemption as to the front-of-pack statement by pointing to an entirely different statement on another part of the label" is frivolous, at best. ECF 24 at 6. A plaintiff overcomes preemption if the claim imposes labeling requirements that are "identical to the federal labeling requirements." *Reid*

*v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). FDA regulations plainly do not allow front label protein advertising when a product fails to satisfy the requirements of § 101.9(c)(7)(i). "[U]nder section 101.13(n). a manufacturer may only make a 'nutrient content claim'—a statement characterizing the level of a nutrient in the product outside of the nutrition facts panel—if they provide a nutrition facts panel that complies with section 101.9. § 101.13(n)." *Rausch*, 2023 U.S. Dist. LEXIS 39231, at *8-9. KIND's "nutrition facts panels are out of compliance with section 101.9, so its nutrient content claims (the statements about the products' protein content) are also unlawful." *Id*. FDA, thus, links the rules related to the NFP to the rules governing protein advertisements. Because FDA conditions the ability to advertise protein on compliance with § 101.9, claims based on front label advertisements on products that unlawfully failed to comply with the labelling rules for the NFP parallel FDA rules and survive preemption. Nothing more is needed to avoid express preemption.[1]

## B. *Rausch* forecloses KIND's argument that the misleading-by-omission claim is impliedly preempted.

Claims sounding in fraud—including those based on consumer protection statutes—escape implied preemption because they rest on traditional state tort duties. *See Chong*, 585 F. Supp. 3d at 1219 (*Buckman* does not preempt "pre-existing, traditional state tort law claims."); *see also Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 98752, at *49–50 (N.D. Cal. July 12, 2013) (California consumer protection statutes escape *Buckman* because "Plaintiff is not 'suing *because* Defendant's labeling violates the FDCA,' but rather because Defendant's labeling is allegedly deceptive and misleading in violation of California law."); *Loreto*, 515 F. App'x at 579 (plaintiffs "claims under state consumer protection laws based upon" the theory that a label is false or misleading relies on "traditional state tort law predating the FDCA, and would exist in the absence of the Act. *Buckman*, 531 U.S. at 353. This claim is not preempted"). Plaintiff alleges that KIND's labeling is misleading because it omitted the FDA-required information, which would have revealed

---

[1] KIND's argument that this reading "would effectively nullify the express preemption found in 21 U.S.C. § 343-1 as to the entire label whenever a plaintiff alleges any misbranding as to any part of the label" is a red herring. ECF 24 at n. 3. Sections 101.13(n) and (b) specifically relate to **voluntary** advertisements of nutrients. Under those provisions, a failure to comply with the rules governing the NFP can render the advertisement unlawful, not the entire label itself.

that the products provide significantly less of the daily value of protein than the front label suggests. Compl. ¶ 48. That should be the end of the matter.

KIND nonetheless argues that the claim is impliedly preempted because there is no specific common law duty to disclose a %DV; which it argues arises solely from federal regulations. It claims that even *Rausch*'s analysis "rests solely on a reading of FDA regulations" (emphasis omitted). ECF 24 at 5-6. This is nonsensical and ignores the fact that Judge Chhabria held that the "the labels are misleading within the meaning of various California statutes and California common law." *Rausch*, 2023 U.S. Dist. LEXIS 39231, at *18. Regardless, KIND's argument misses a more important point. Because of the FDCA's express preemption provision, federal law will ***always*** set boundaries on any state law duties, but that does not lead to implied preemption. As the First Circuit explained in rejecting a similar argument:

> Of course, the FDCA exists, and it will ***limit the scope*** of [Plaintiffs' deception] argument. Its dual preemptive force will restrict the factfinder to determining whether conduct that ***does violate*** the federal regulations is ***also deceptive*** under Massachusetts law by virtue of its nature rather than its federal illegality. Nevertheless, thus constrained, the claim as plausibly construed survives the defendant's implied preemption argument.

*Dumont v. Reily Foods Co.*, 934 F.3d 35, 43 (1st Cir. 2019) (emphasis added). Indeed, the Ninth Circuit has already held rejected the conclusion "that any use of federal law to establish a [state] standard of care is an attempt to enforce the underlying federal provisions." *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1041 (9th Cir. 2015); *see also id.* at 1039-41 (holding that the FDCA did not impliedly preempt defining the general state law duty to warn in a failure to warn case based on disclosure requirements set forth in FDA regulations).

State tort duties are generally broad, and if KIND were correct, then only claims arising out of a specific duty to disclose the ***exact*** information at issue could avoid implied preemption, which would be never. Instead, state tort law recognizes a general duty to disclose facts in certain circumstances that, when applied to a ***specific*** case give rise to ***specific*** duties such as, here, disclosing the %DV. In California, the general duty to disclose arises in four circumstances:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact.

*LiMandri v. Judkins,* 52 Cal.App.4th 326, 337, 60 Cal.Rptr.2d 539 (1997). The second, third and fourth circumstances apply here. The Complaint alleges that KIND's state law duty to disclose arose because it (1) exclusively knew that its products contained low quality proteins, which material facts were not known or knowable to plaintiffs or reasonable consumers and would have been revealed by the %DV, Compl. ¶¶ 7, 30, 60, 93; (2) it knew but actively concealed that its "Products did not contain or provide the amount of protein represented on the label," which, again, would have been revealed by the %DV, *id*. ¶ 93; and/or (3) it chose to make partial representations on the front label about the Products' protein content, but failed to disclose material facts (i.e., the corrected amount of protein per serving expressed as a %DV) that would have provided necessary context to prevent the partial representation from being misleading, *id*. ¶¶ 17-18. In such circumstances, there is—without question—an independent state law duty to disclose the product's protein quality in the form of a %DV even though there is no state law duty that says specifically "thou shalt disclose the %DV for protein." Instead, the specific %DV disclosure requirement arises from the general state law duty to disclose material facts to prevent misleading consumers as applied to the facts of this case.

KIND's fallback position is that there is no deception since "[t]he %DV does not provide plaintiff or consumers with information about protein quality, or any other additional information about the front-of-pack protein claim". ECF 24 at 10. The Court can easily reject this argument because KIND admitted the exact opposite in its Motion to Dismiss in *Chong*, where it stated "As specified in the regulations, the 'corrected amount of protein per serving' that is to be expressed as a percent of daily value is determined by applying the PDCAAS to the total amount of protein…PDCAAS (as opposed to plaintiffs' so-called, unidentified amino acid test) is a methodology used to score the "quality" of protein based on how it is digested (absorbed) by the body." *Chong, et al. v. KIND, LLC*, No. 3:21-cv-04528-RS, ECF No. 16 at 7 (N.D. Cal. 2022); *see also Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) ("Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, then later seeking an advantage by taking a clearly inconsistent position.")

In any event, *Rausch*, again, forecloses the argument. Judge Chhabria discussed how the FDA envisions the %DV to work in practice with everyday consumers:

> To make things more concrete, imagine a whey protein bar and an oat protein bar. Imagine that whey is a higher-quality protein that's almost fully absorbable; oat is not. Both the whey and oat protein bars could list 20g of protein on their nutrition facts panel. But if both protein bars say, "20g protein!" on the front of their labels, they must include the quality-adjusted percent on their nutrition facts panels. If we assume that 100% of the whey protein can be absorbed by the human body, the "corrected amount of protein per serving" for the whey protein bar would be 20g. That number, expressed as a percent of daily value, would be 40%. The oat protein bar wouldn't fare so well. If we assume that the human body can only absorb 50% of the oat protein, the "corrected amount of protein per serving" for the oat protein bar would be 10g. And ten grams expressed as a percent of daily value is 20%.

*Rausch*, 2023 U.S. Dist. LEXIS 39231, at *3-4. He further explained that "[t]he FDA is generally skeptical that consumers know exactly how much of any nutrient they should be consuming every day." *Id*. at *14-*15, citing 56 Fed. Reg. 60421-01, 60426 (Nov. 27, 1991). "***That's why the FDA thinks the percent daily value is helpful: it gives consumers a sense of how the food might fit into their broader nutritional needs***." *Id*. (emphasis added). So, in the example above, a "consumer might see '20% of the daily value of protein' and think, 'I'd have to eat roughly five of these to get enough protein for the day.'" *Id*. It "doesn't require any complicated math, and that information puts the potentially misleading protein statement in context." *Id*. As a result, the "expectations created by statements like 'excellent source of protein!' or '20g protein!' can be tempered by looking at the percent daily value." *Id*.

Indeed, as Judge Chhabria explained in *Rausch*, FDA promulgated the regulations at issue here through its authority to address deceptive conduct. FDA has authority to promulgate nutrition labelling regulations pursuant to Section 343(q) and 343(a) of the FDCA. *Id* at *16-*18. Section 343(q) pertains to "nutrients that must be declared on *all* products," and, thus, does not apply because "[h]ere, the FDA has only required manufacturers to include the quality-adjusted percent in certain circumstances: when the manufacturer makes a protein claim elsewhere on the product's label." *Id.* at *16. Thus, "it seems that the FDA has imposed this requirement under its authority to regulate misleading labels, found in section 343(a)." *Id*. As a result, "it's not much of a leap to say that failure to follow the requirement renders a label misleading within the meaning of the FDA's regulations. So, contrary to the dicta in *Nacarino*, Rausch has plausibly alleged that a statement of protein quantity outside of a nutrition facts panel is misleading within the meaning of 21 C.F.R. §

101.13(i)(3) if the statement is unaccompanied by the quality-adjusted percent daily value." *Id*. at *18.

The deceptive conduct described in *Rausch* is the exact kind of deception that Plaintiff alleges occurred here. Plaintiff alleges that "Defendant's use of a front-label protein claim, while failing to include the required statement of the corrected amount of protein per serving in the NFP calculated using the PDCAAS method and expressed as a %DV, is misleading." Compl. ¶ 48 This is because "consumers are unaware of the nutritional value of various protein sources and upon seeing a front-label quantitative protein claim reasonably believe that all of the advertised protein will be nutritionally available—i.e., that the product contains high quality proteins." *Id*. "Had Defendant complied with the law, the statement of the corrected amount of protein expressed as a %DV would have revealed that the Products provide significantly less of the daily value of protein than high quality protein products with comparable protein quantities." *Id*. This type of deception – which both tracks FDA regulations and is grounded in traditional, common law tort duties – falls within the "narrow gap" that escapes preemption. *See Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) ("The plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted []), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*").

Ultimately, consumer deception is a question of fact that cannot be resolved at this stage. *See Williams v. Gerber Prods. Co*., 552 F. 3d 934, 938 (9th Cir. 2008). Given that the Court must accept Plaintiffs' allegations as true and draw inferences in favor of Plaintiff at this stage, Plaintiff adequately pleads that the omission was deceptive, as other courts have found. *See Retail Prop. Trust v. United Broth. of Carpenters*, 768 F.3d 938, 945 (9th Cir. 2015); *see also Brown v. Van's Int'l Foods, Inc*., No. 22-cv-00001-WHO, 2022 U.S. Dist. LEXIS 154627, at *10–22 (N.D. Cal. Aug. 22, 2022) (rejecting reasonable consumer deception challenge).

Dated: April 3, 2023.

**GUTRIDE SAFIER LLP**

*s/ Seth A. Safier*
Seth A. Safier (State Bar No. 197427)
 seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
 marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
 hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
 kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff*