1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRIS GUERRA,

            Plaintiff,

    v.

KIND, LLC,

            Defendant.

Case No.  22-cv-06654-RS

**ORDER GRANTING IN PART MOTION TO DISMISS**

## I. INTRODUCTION

In this putative class action, named Plaintiff Chris Guerra ("Plaintiff") challenges the statements by defendant KIND LLC ("Defendant") on the packaging of its products, ranging from protein and nut bars to oatmeal and cereal, regarding the protein content of those products. Defendant moves to dismiss, arguing that Plaintiff's claims are effectively identical to the claims already dismissed in *Chong v. Kind LLC*, 585 F. Supp. 3d 1215 (N.D. Cal. 2022), and are either expressly or impliedly preempted by the Food, Drug, and Cosmetic Act (FDCA), or otherwise fail for standing, reliance, and other issues. For the reasons that follow, the motion to dismiss is granted in part and denied in part.

## II. BACKGROUND

As part of a healthy diet, protein is a nutrient that consumers (like Plaintiff) sometimes look for when making food purchasing decisions. With this in mind, the Food and Drug Administration ("FDA") requires all food products to provide "a statement of the number of grams of protein in a serving" in the Nutrition Facts Panel ("NFP"). 21 C.F.R. § 101.9(c)(7).

1    Yet proteins are not all the same: some can be more or less digestible to the average

2    person.[1] Therefore, even though a product may contain a specific amount of protein, one may not

3    be able to digest—and therefore receive the nutritional benefits of—all of that protein.

4    To reflect this, the FDA created a methodology for calculating and expressing the

5    "corrected amount of protein per serving." First, proteins are scored using a protein digestibility-

6    corrected amino acid score ("PDCAAS") of between zero and one to account for how much

7    protein in a product is available, with one suggesting near total digestibility. To arrive at the

8    "corrected amount of protein per serving"—usually expressed as a "Percent of Daily Value"

9    ("%DV")—the "actual amount of protein" (*i.e.*, the unadjusted protein figure) stated on the

10    nutrition label is adjusted by the PDCAAS, and then divided by the Daily Reference Value (*i.e.*, a

11    target amount of daily protein consumption). 21 C.F.R. § 101.9(c)(7)(i)-(iii).

12    As an example, if a product lists 10g of protein in the NFP but those proteins have a

13    PDCAAS of .5, then the corrected amount of protein would be 5g per serving. Expressed as a

14    percentage of the FDA's daily target for adults (50 grams of protein), that product would have a

15    %DV of 10% (five divided by fifty). If the proteins were fully digestible and had a PDCAAS of 1,

16    however, the %DV would have been 20% (ten divided by fifty).

17    Plaintiff avers that he "regularly" checks the NFP on products before purchasing any

18    product for the first time, including the %DV for protein (where available) to serve as a basis for

19    comparison between similar products. Plaintiff further avers that he did so for Defendant's KIND

20    Dark Chocolate Nuts & Sea Salt and Peanut Butter Dark Chocolate nut bars but, because there

21    was no %DV provided, he could only "go off of the stated grams of protein," and "assume[] that

22    all of those disclosed grams [we]re in a form his body [could] use." Dkt. 1 at 18. He therefore

23    relied on the representation of "6g PROTEIN" on the front label of the products. However,

24    because Defendant's products use plant-based proteins—many of which have PDCAAS between

25    0.4 and 0.5—Plaintiff claims that they contain "low quality proteins" and do not actually provide 6

26    _____

27    [1] This arises from the variable digestibility of proteins or a deficiency in one or more of the nine amino acids that are essential to human protein synthesis.

28

United States District Court
Northern District of California

1    grams of useable protein. Had Defendant either included the %DV or refrained from making the

2    protein claim on the front of the package, Plaintiff claims he would either have not purchased the

3    bars or paid less for them.

4          As a result, Plaintiff filed suit against KIND on behalf of himself and other similarly

5    situated consumers in California, asserting five causes of action: (1) violation of the Consumers

6    Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*; (2) false advertising under

7    Business & Professions Code § 17500 *et seq.* ("FAL"); (3) common law fraud, deceit, and/or

8    misrepresentation; (4) unlawful, unfair, and fraudulent trade practices in violation of Business &

9    Professions Code § 17200 *et seq.* ("UCL"); and (5) unjust enrichment.

## III. LEGAL STANDARD

### A.  Motion to Dismiss

12          Article III of the U.S. Constitution authorizes the judiciary to adjudicate only "cases" and

13   "controversies." The doctrine of standing is "an essential and unchanging part of the case-or-

14   controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

15   Defendant moves to dismiss on the basis that Plaintiff lacks standing under Rule 12(b)(1) of the

16   Federal Rules of Civil Procedure. A 12(b)(1) motion to dismiss a complaint challenges the court's

17   subject matter jurisdiction over the asserted claims. It is the plaintiff's burden to prove jurisdiction

18   at the time the action is commenced. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A facial

19   attack under Rule 12(b)(1) "asserts that the allegations contained in the complaint are insufficient

20   on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

21   (9th Cir. 2004). When considering this type of challenge, the court is required to "accept as true

22   the allegations of the complaint." *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189

23   (9th Cir. 2001).

24          Defendant also alleges that Plaintiff fails to state a claim. A complaint must contain "a

25   short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

26   8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient

27   factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially

2   plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

3   inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at

4   556).

5          A Rule 12(b)(6) motion to dismiss tests the sufficiency of the claims alleged in the

6   complaint. Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal

7   theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *See*

8   *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and

9   citation omitted). When evaluating such a motion, the court must accept all material allegations in

10  the complaint as true and construe them in the light most favorable to the non-moving party. *In re*

11  *Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). It must also "draw all

12  reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d

13  556, 561 (9th Cir. 1987).

14       **B. California Statutes**

15         Plaintiff avers violations of the UCL, FAL, and CLRA. Courts often analyze claims under

16  these three statutes together. *See, e.g., Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1064

17  (N.D. Cal. 2017).

18         The UCL "bars 'unfair competition' and defines the term as a 'business act or practice'

19  that is (1) 'fraudulent,' (2) 'unlawful,' or (3) 'unfair.'" *Shaeffer v. Califia Farms, LLC*, 44 Cal.

20  App. 5th 1125, 1135 (2020). "Each is its own independent ground for liability under the unfair

21  competition law, but their unifying and underlying purpose is to protect both consumers and

22  competitors by promoting fair competition in commercial markets for goods and services." *Id.*

23  (internal quotation marks and citations omitted).

24         The FAL "bars 'any advertising device ... which is untrue or misleading.'" *Id.* (quoting

25  Cal. Bus. & Prof. Code § 17500). "[T]his law and the fraudulent prong of the unfair competition

26  law substantively overlap," and thus "plaintiff's burden under these provisions is the same." *Id.* at

27  1136. "[T]o state a claim under either the UCL or the [FAL], based on false advertising or

28

1   promotional practices, it is necessary only to show that members of the public are likely to be

2   deceived." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (internal quotation marks omitted).

3          The CLRA defines various "unfair methods of competition and unfair or deceptive acts or

4   practices." Cal. Civ. Code § 1770. Some of these unfair methods or acts include representing that

5   goods have characteristics or benefits they do not have, and representing that goods are "of a

6   particular standard, quality, or grade" when they actually are not. *Id.* The UCL, FAL, and CLRA,

7   along with common law fraud, all utilize the reasonable consumer standard, "which requires a

8   plaintiff to show potential deception of consumers acting reasonably in the circumstances — not

9   just any consumers." *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011); *see Ham v.*

10  *Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014).

## IV. DISCUSSION

12         Plaintiff advances three distinct theories for recovery. First, Plaintiff argues that KIND's

13  omission of the %DV is misleading because consumers believe they will receive the full benefits

14  of the protein as advertised on the front label, and inclusion of the %DV would have revealed that

15  the products actually provide significantly less of the daily value of protein than products with

16  comparable protein quantities (the "misleading-by-omission claim"). Second, Plaintiff argues that

17  KIND's front label protein claims are unlawful *per se* because FDA regulations, incorporated via

18  the Sherman Law, prohibit such claims. Third, Plaintiff argues that KIND unlawfully omitted the

19  %DV in the NFP, although § 101.9(c)(7)(i) required it.

20         **A.  Preemption**

21         In light of federal enactments in the food labeling space, prior to reaching the merits,

22  Plaintiff must demonstrate that his claims, predicated on state law, are not preempted.

23              1.   The FDCA's Regulatory Scheme

24         The Food, Drug, and Cosmetics Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, and its

25  amendments, implemented through the Nutrition Labeling and Education Act of 1990 ("NLEA"),

26  establish uniform requirements for labeling on food products in order to prohibit the misbranding

27  of food. With respect to protein, the FDCA requires the NFP include the number of grams of

28

United States District Court
Northern District of California

protein in a serving. 21 C.F.R. § 101.9(c)(7). Importantly, this figure on the NFP need not be the "corrected" amount of protein per serving (i.e., the PDCAAS-adjusted figure); it can present the actual amount of protein in the product, regardless of digestibility. (This is referred to as the nitrogen method of calculating protein.[2])

In fact, the "corrected" figure is not required on the label at all—*except* where "a protein claim," like a statement "6g protein" on the front of the package, "is made for the product." 21 C.F.R. § 101.9(c)(7)(i) ("A statement of the corrected amount of protein per serving . . . may be placed on the label, except that such a statement shall be given if a protein claim is made for the product . . . ."); *see also* 21 C.F.R. § 101.13(b), (c) (defining "nutrient content claim" as one that "expressly or implicitly characterizes the level of a nutrient" but does not appear in the nutrition label). A %DV for protein is only required, in other words, when products make protein claims outside of the NFP.

Critically—and paradoxically—*even where a protein content claim triggers the %DV requirement*, the FDCA does *not* require that the protein content claim itself be expressed using the "corrected" protein figure. Indeed, the FDA has released guidance specifically addressing the issue and reiterating that "determination of compliance for protein nutrient content claims will be based on the use of . . . either of the methods."[3] *Industry Resources on the Changes to the*

---

[2] *See* 21 C.F.R. § 101.9(c)(7) ("Protein content may be calculated on the basis of the factor 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the "Official Methods of Analysis of the AOAC International," except when official AOAC procedures described in this paragraph (c)(7) require a specific factor other than 6.25, that specific factor shall be used.")

[3] In relevant part, the Guidance provides:

**There are separate methods for determining the number of grams of protein in a serving for declaration on the Nutrition Facts label and for determining the percent Daily Value of protein for the Nutrition Facts label (21 CFR 101.9(c)(7)). Which method should be used when calculating protein values for use in protein nutrient content claims?**

…

By design, 21 CFR 101.9(c)(7) specifically provides for two different methods for determining protein values. The regulation states, in 21 CFR 101.9(c)(7), that protein content may be calculated [using the nitrogen method]. Additionally, 21 CFR 101.9(c)(7)(ii) provides the method for determining protein content using the protein

United States District Court
Northern District of California

*Nutrition Facts Label*, U.S. Food & Drug Administration, https://www.fda.gov/food/food-labeling-nutrition/industry-resources-changes-nutrition-facts-label ("2022 Nutrient Content Claim Guidance"). "By design," therefore, the FDCA permits products to advertise unadjusted protein claims on the product's front packaging and in the NFP, and include the adjusted protein figure in the NFP as a percentage (not an absolute gram figure). *Id.*

      2.   The Narrow Gap Left Between Express and Implied Preemption

In light of the extensive scheme it creates, the FDCA expressly preempts state laws and claims for relief that seek to impose any labeling requirements "not identical to" those imposed by federal law. 21 U.S.C. § 343-1(a) (prohibiting the establishment of any requirements not identical to those provided for in the FDCA); *Hawkins v. Kroger Co.*, 906 F.3d 763, 769 (9th Cir. 2018). Claims thus cannot proceed unless they are predicated on requirements identical to the FDCA.

On the other hand, claims cannot be made to enforce the FDCA itself. That is, claims that are not expressly preempted can be impliedly preempted due to Congress' decision *against* providing for private enforcement of the FDCA. *See* 21 U.S.C. § 337(a). ("Except as provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."). Although "citizens may petition the FDA to take administrative action," ultimately it is the FDA that is "responsible for investigating potential violations of the FDCA" and enforcing the FDCA; as a result, claims may be impliedly preempted because they conflict with the FDA's contemplated enforcement scheme. *Perez v. Nidek Co.*, 711 F.3d 1109, 1119 (9th Cir. 2013). That was precisely the holding in *Buckman v. Plaintiffs' Legal Committee*, which found that plaintiffs' "state-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives." 531 U.S. 341, 350 (2001); *see also Nexus Pharms., Inc. v. Cent. Admixture Pharmacy*

---

digestibility-corrected amino acid score for use in calculating the percent Daily Value.

      Determination of compliance for protein nutrient content claims will be based on the use of the methods provided in 21 CFR 101.9(c)(7), including either of the methods mentioned above.

1    *Servs., Inc.*, 48 F.4th 1040, 1048 (9th Cir. 2022) ("The statutory prohibition on private

2    enforcement gives the FDA discretion to temper enforcement or not to enforce in circumstances it

3    deems appropriate. If state law facilitates enforcement beyond what the FDA has deemed

4    appropriate, then state law claims may indeed 'stand as an obstacle' to FDA's enforcement

5    discretion by enabling what the FDA regards as over-enforcement.").

6            As both Parties agree, this combination of express and implied preemption leaves only a

7    "narrow gap" through which mislabeling claims may pass. The Ninth Circuit has held: "[t]he

8    plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly

9    preempted), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a

10   claim would be impliedly preempted under *Buckman*)." *Perez*, 711 F.3d at 1120 (cleaned up). The

11   main question is thus whether Plaintiff's claims fit within that "narrow gap."

12           3.  Plaintiff's Unlawful Theories

13           In *Chong v. KIND, LLC*, 585 F. Supp. 3d 1215 (N.D. Cal. 2022), this Court found that

14   *Buckman* preemption applied to bar a UCL claim brought (for a violation of the Sherman Law) for

15   similar mislabeling allegations. As *Chong* explained, the FDCA "does preempt state-law claims

16   that ultimately are dependent on the existence of violations of federal law." 585 F. Supp. 3d at

17   1219 (citation omitted). The opinion continued:

18           Plaintiffs here are not pursuing pre-existing, traditional, state tort law claims, rather
             they rely on California's Sherman Law, which post-dates and is entirely dependent
19           upon the FDCA, in that it expressly adopts the FDCA and regulations as state law.
20           It provides that "[a]ll food labeling regulations and any amendments to those
             regulations adopted pursuant to the federal act, in effect on January 1, 1993, or
21           adopted on or after that date shall be the food labeling regulations of this state."
             Cal. Health & Safety Code § 110100(a) (emphasis added). As such, plaintiffs'
22           claims based on the omission of the % DV in some of KIND's product labels are
             preempted. *See Stengel*, 704 F.3d at 1230 (FDCA impliedly preempts state law
23           claim that "originates from, is governed by, and terminates according to federal
             law" (quotation marks omitted)). Those claims must also be dismissed.
24

25   *Chong*, 585 F. Supp. 3d at 1219–20.

26           Plaintiff acknowledges that his UCL unlawful prong claim would be subject to the same

27   implied preemption analysis from *Chong*, but respectfully asks for a "fresh look" at the holding,

28

citing contrary conclusions reached by others in this District. Those decisions notwithstanding, it still remains the case that there is no controlling guidance from the Ninth Circuit or the Supreme Court on the nature of implied preemption under the FDCA, so no reason arises to depart from *Chong*'s earlier holding.[4] Plaintiff's latter two theories—that Defendant's front label protein claims are unlawful *per se* and the %DV omission from the NFP was unlawful—are therefore preempted, and cannot sustain any of Plaintiff's causes of action. Because the defect is one of legal theory and not factual insufficiency, Plaintiff is not granted leave to amend to reassert these theories.

### 4.   Plaintiff's Misleading-By-Omission Claims

Plaintiff's remaining legal theory, that the absence of a %DV from the Nutrition Facts Panel renders the protein claim on the front of the packaging misleading, is a much closer call. Facing a "ballooning number of cases" alleging similar claims as of late, *Lesh v. DS Naturals, LLC*, No. 22-CV-01036-HSG, 2023 WL 2530986 at *1 (N.D. Cal. Mar. 15, 2023), "courts in this District appear to be divided" on the issue. *Roffman v. Rebbl, Inc.*, No. 22-CV-05290-JSW, 2023 WL 1420724, at *4 (N.D. Cal. Jan. 31, 2023).

At least two courts in this district have found that Plaintiff's theories are expressly preempted. *See Roffman v. Perfect Bar, LLC*, No. 22-CV-02479-JSC, 2022 WL 4021714 at *7 (N.D. Cal. Sept. 2, 2022) ("Since the regulations allow a nitrogen-method figure on the nutrition facts panel without any other information, Plaintiffs' claim that the nitrogen-method figure on the front label without any other information is misleading conflicts with and is not identical to FDA regulations and is thus preempted. To put it another way, since FDA regulations prohibit misleading labeling, *see* 21 C.F.R. § 101.13(i)(3), and FDA regulations permit a nitrogen-method figure, *see id.* § 101.9(c)(7), the nitrogen-method figure is not misleading under the FDA

---

[4] Nothing in the recent *Hollins v. Walmart* decision alters the analysis. *See Hollins v. Walmart*, No. 21-56031, 2023 WL 3364616, at *9 (9th Cir. May 11, 2023) ("This case does not involve a nutrient content claim, conflicting regulations, or any regulation requiring a manufacturer to make a misleading claim.")

United States District Court
Northern District of California

1  regulations. Thus, to find that the nitrogen-method figure is misleading would conflict with FDA

2  regulations.") (citations omitted); *Brown v. Food for Life Baking Co.*, No. 21-CV-10054-TLT,

3  2023 WL 2637407 at *3 (N.D. Cal. Feb. 28, 2023) ("[T]he FDA expressly allows front panel

4  protein claims to be determined by the nitrogen method. Thus, regardless of whether the corrected

5  protein percent daily value was listed on the NFP, the total amount of protein on the front panel—

6  the amount determined by the nitrogen method—remains unchanged. Thus, while 'the FDA

7  requires manufacturers to include extra information in the Nutrition Facts label (the digestibility-

8  adjusted figure, expressed as a percent of daily value) when they make statements about protein

9  elsewhere on the packaging,' 'this does not mean that statements of protein quantity would be

10  misleading without this additional context.'") (citations omitted).

11         Conversely, several courts have declined to dismiss claims predicated on this theory. One

12  found the theory adequately alleged misleading behavior, in a departure from prior reasoning. *See*

13  *Rausch v. Flatout, Inc.*, No. 22-CV-04157-VC, 2023 WL 2401452, at *5 (N.D. Cal. Mar. 8, 2023)

14  ("But that part of *Nacarino* was (with apologies) wrong. The better reading of the FDA's

15  regulations is that prominently advertising a product's protein quantity outside of the nutrition

16  facts panel *is* misleading (within the meaning of the Food, Drug, and Cosmetic Act and the FDA's

17  regulations), if the manufacturer doesn't include the quality-adjusted percent in the nutrition facts

18  panel.). Another found the theory at least plausible at the motion to dismiss stage. *See Brown v.*

19  *Van's Int'l Foods, Inc* ("Van's I")., No. 22-CV-00001-WHO, 2022 WL 1471454, at *6 (N.D. Cal.

20  May 10, 2022) ("At least at this stage, [Plaintiff's] theory that the front-label claim is misleading

21  because of the missing information in the Nutrition Facts panel appears plausible."). Another

22  refrained from opining on the merits altogether, allowing the case to proceed because the issue

23  "warrants further development." *Rebbl*, 2023 WL 1420724, at *4 ("The Court concludes this issue

24  warrants further development, and it DENIES Rebbl's motion to dismiss claims based on this

25  theory without prejudice. Rebbl may renew this argument by way of a motion for summary

26  judgment or a motion for judgment on the pleadings, and the parties shall be prepared to address

27  in more detail the impact of the [2022 Nutrient Content Claim Guidance].")

28

This kaleidoscope of outcomes stems in no small part from the tension that inherently underlies the FDA's protein labeling requirements. On the one hand, as Defendant argues, the protein claims on the front packaging "accurately state the total amount of protein in the product." Dkt. 19 at 9. Mindful of the fact that even "true" advertising can be "misleading" if it "has a capacity, likelihood or tendency to deceive or confuse the public," however, *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008), it is also of paramount importance that the FDA has specifically authorized publication of the actual grams of protein in protein nutrient claims. Courts in this district thus routinely find expressly preempted standalone claims that representations of protein content using the nitrogen method are misleading. *See, e.g.*, *Swartz v. Dave's Killer Bread, Inc.*, No. 4:21-CV-10053-YGR, 2022 WL 1766463, at *4 (N.D. Cal. May 20, 2022) (declining to interpret the regulations "in isolation" to "lead to 'absurd results,' such as rendering a statement that is approved by one regulation misleading under another"). After all, Defendant is, as *Swartz* explains, merely complying with a method explicitly endorsed by the FDA:

> [T]otal protein may be misleading in the colloquial sense, but the FDA has explicitly addressed how to communicate with consumers about the nutrient content of packaged foods. The difference between total and corrected protein is not an issue that the agency has overlooked. As the FDA states in the 2022 guidance, use of both total and corrected protein in the regulations is "by design." The Court sees no reason to second-guess the FDA's chosen approach.

At the same time, the FDCA's introduction of the concept of the PDCAAS—and the mandatory inclusion of the %DV under 21 C.F.R. § 101.9(c)(7)(i) any time a product makes a protein claim outside of the NFP—together provide support for the belief that the FDCA's very structure assumes that a protein content claim could be misleading, in certain circumstances, without the additional disclosures the FDCA requires. This is seen in commentary by the FDA itself. *See* 58 Fed. Reg. 2079-01 at 2101–2 (Jan. 6, 1993) ("Information on protein quantity alone can be misleading on foods that are of low protein quality."). The FDA declined to require the %DV in *all* situations because of the additional costs associated with calculating %DV, mandating it only if a manufacturer touts the protein via a nutrient claim, because "where a manufacturer decides to make a protein claim, the [] 'burden and expense' of calculating the percent are

'voluntarily assumed by the manufacturer.'" *Rausch*, 2023 WL 2401452, at *5 (citing 58 Fed. Reg. 2079-01, 2102-04). That indeed is a sensible approach. Less sensible, though, is the FDA's enduring commitment to unadjusted protein figures *even where the %DV requirement is triggered*. The idea that it is acceptable to advertise prominently a figure that would be misleading *but for fine print on the back* runs entirely antithetical to settled Ninth Circuit law. *See Ebner v. Fresh, Inc.,* 838 F.3d 958, 966 (9th Cir. 2016) ("Stated straightforwardly, *Williams* [*v. Gerber*] stands for the proposition that *if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception.").

This is, ultimately, a dilemma born of the regulatory structure. With that said, Plaintiff has, barely, the better of the argument. Contrary to Defendant's claim that "[i]t cannot be that FDA permits . . . quantify[ing] protein one particular way in the Nutrition Facts, yet prohibits them from using the same exact methodology elsewhere on their products' label," the structure of the regulations themselves suggests the exact same information is to be treated differently, according to where the figure is placed. At bottom, "[t]he FDA's decision to spare most manufacturers from the expense of calculating the [%DV] does not mean that protein statements (made outside of the nutrition facts panel) can never be misleading." *Rausch*, 2023 WL 2401452, at *5.

This conclusion is not altered by the FDA's endorsement of the nitrogen method in content claims. There is no doubt that Defendant's use of the actual grams of protein in a protein claim is permissible, and any claim otherwise is preempted. Plaintiff's theory nonetheless wriggles out from under express preemption by arguing that the content claim is not misleading in its own right, but due to a failure elsewhere. Though listing the actual grams of protein is permissible under the FDCA, it is at least plausible, at this stage, that the failure *also* to comply with the other FDCA requirements—namely, providing a %DV per 21 C.F.R. § 101.9(c)(7)(i)[5]—renders the

---

[5] This specific and explicit requirement, moreover, cabins the scope of preemption, directly answering Defendant's argument that Plaintiff would "effectively nullify the express preemption found in 21 U.S.C. 343-1 as to the *entire* label whenever a plaintiff alleges *any* misbranding as to *any* part of the label." Dkt. 24 at 8. Taking seriously the warning in *Swartz* that regulations should not be interpreted in isolation to find "a statement that is approved by one regulation misleading under another," the protein labeling and %DV requirements are all found in § 101.9(c)(7), and are

1  protein content claim misleading. That is, the content claims are not misleading except under

2  certain circumstances—in particular, the failure to follow through with concurrent obligations—

3  for which the FDCA itself accounts.[6] Requiring a %DV in the presence of a protein content claim

4  therefore completely mirrors the FDA's requirements, and Plaintiff's claim squeezes past express

5  preemption because it requires nothing more or less than what the FDCA already requires.[7]

6          Plaintiff's theory also survives implied preemption. Although *Chong* presented similar

7  facts whereby the products at issue included a protein content claim without a corresponding

8  %DV, Plaintiff's current theory was not squarely before the court. Unlike in *Chong*, moreover,

9  Plaintiff here does not rely on California's Sherman Law; instead, Plaintiff invokes authority that

10  does not "expressly adopt[] the FDCA and regulations as state law," *Chong*, 585 F. Supp. 3d at

11  1219, and ultimately cannot be said to "originate[] from, [be] governed by, [or] terminate[]

12  according to federal law." *Id.* at 1220. Thus, even if certain authorities on which Plaintiff relies do

13  not post-date the FDCA, the reasoning in *Chong* will not be applied to bar Plaintiff's theory.

14          Defendant argues that Plaintiff's claims are preempted under *Buckman* because they

15  actually are entirely dependent upon the FDCA, and the case "remain[s] an improper attempt to

16  privately enforce FDA regulations." Dkt. 19 at 1. There is certainly merit to the view that

17  Plaintiff's counsel, a repeat player involved in the burgeoning wave of protein mislabeling cases,

18  is attempting to capitalize on the regulatory loophole described above. Indeed, the alleged offense

19  seems suspiciously akin to the impliedly preempted claims that have been advanced elsewhere.

20  Yet even if the PDCAAS, the %DV, and specific framework described in Plaintiff's suit are

21

22  a far cry from allowing wholly differentiated regulations to nullify one other. Sustaining Plaintiff's
    claim would not, therefore, lead down the slippery slope that Defendant decries.

23  [6] *See Rausch*, 2023 WL 2401452, at *6 (finding that the FDA adopted 21 C.F.R. § 101.9(c)(7)(i)

24  on its statutory authority to regulate misleading statements, leading to the conclusion that "the
    FDA has determined that when a manufacturer makes a protein claim, the manufacturer must

25  include additional information about the protein's quality or else the labeling is misleading.")

26  [7] Defendant's argument regarding the implausibility of Plaintiff's claim is unpersuasive. There is
    no reason to believe that, without any visible indications on the packaging, a reasonable consumer

27  would understand protein digestibility and assume that the protein content claim on the front of the
    packaging must be discounted—or even to what extent it should be discounted.

28

1   entirely constructs of the FDA, it is again at least plausible that Plaintiff's underlying theory

2   would survive if the FDCA were done away with altogether. Though "[n]either the %DV nor the

3   daily value has an analog in common law," the concept that consumers could sue when falsely

4   promised more than they were getting harkens back to time immemorial.[8]

5       If the FDCA existed but did not specify additional requirements when protein claims were

6   made, Plaintiff's challenge would have been expressly foreclosed. But that is simply not the case

7   today. So long as the FDCA exists and includes requirements to account for the gap in protein

8   digestibility, there is a specific framework and specific vocabulary that, understandably, plaintiffs

9   will use to describe their concerns, given the narrow gap they must navigate. That Plaintiff makes

10  reference to the language of the FDCA to describe how he believes he was misled is therefore not

11  fatal. Ultimately, though the theory may seem only "semantically different" from that asserted in

12  *Chong*, Plaintiff's reformulation does just barely enough. Plaintiff's claims, to the extent they are

13  independent, traditional state law claims, narrowly squeeze through the preemption gap.

14      **B.  Standing**

15      Defendant argues that Plaintiff lacks standing in four ways: (1) Plaintiff lacks Article III

16  and UCL standing because he fails to allege injury based on the absence of a %DV; (2) Plaintiff

17  lacks standing to pursue injunctive relief because he does not plausibly allege that he will purchase

18  KIND's products in the future; (3) Plaintiff lacks standing to sue for products he did not purchase;

19  and (4) Plaintiff does not plausibly allege reliance.

20      These arguments are unavailing. With respect to the first, Plaintiff has alleged a cognizable

21  injury where he pleads that he either purchased the products or paid more money for them than he

22  otherwise would have, absent the mislabeling. *Van's I*, 2022 WL 1471454, at *9.

23      With respect to the second argument, the Ninth Circuit has explained, "[i]n the context of

24  false advertising cases," that "a plaintiff may establish the risk of future harm in two ways: (1) the

25

26  _____

27  [8] In a world without the FDCA, Plaintiff might have been able to maintain a frontal challenge without fear of express preemption.

28

1    consumer's plausible allegations that they will be unable to rely on the product's advertising or

2    labeling in the future, and so will not purchase the product although they would like to; or (2) the

3    consumer's plausible allegations that they might purchase the product in the future, despite the

4    fact it was once marred by false labeling because they may reasonably, but incorrectly, assume the

5    product was improved." *Id.* at *10 (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–

6    70 (9th Cir. 2018)). Plaintiff satisfies these requirements because he has pleaded that he continues

7    to desire to purchase KIND products, would likely purchase them again in the future if they were

8    "reformulated or relabeled" to contain the protein represented on the labels, regularly visits stores

9    where the products are sold, and absent an injunction preventing the mislabeling, would be unable

10   to rely on Defendant's labels when shopping in the future. Defendant's arguments about standing

11   for injunctive relief are therefore rejected for the same reason that they were rejected in *Brown*.

12        With respect to the third argument, "a plaintiff may have standing to assert claims for

13   unnamed class members based on products he or she did not purchase so long as the products and

14   alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912

15   F.Supp.2d 861, 869 (N.D. Cal. 2012). As such, "the critical inquiry seems to be whether there is

16   sufficient similarity between the products purchased and not purchased." *Astiana v. Dreyer's*

17   *Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20,

18   2012). Exhibit B to the Complaint lists all of the challenged products, which include nut clusters,

19   nut bars, energy bars, healthy grains granola, clusters, snack mix, oatmeal, protein cereal, and nut

20   butter bars. These products are fairly similar. Moreover, as Plaintiff is challenging "the same basic

21   mislabeling practice across different product[s]" of a protein claim coupled with a failure to

22   include a %DV in the NFP, *id.* at *13, there is sufficient similarity across the claims for standing,

23   despite Plaintiff not having purchased all of the challenged products.

24        Finally, Defendant argues that Plaintiff's allegations do not plausibly demonstrate actual

25   reliance on the missing %DV, as he "proceeded to purchase the KIND products despite the alleged

26   absence of this information." Dkt. 19 at 12. Plaintiff's actual reliance, Defendant argues, is not on

27   any of KIND's labels, but on Plaintiff's "unreasonable and unsupported misconception that '6

28

United States District Court
Northern District of California

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
CASE NO. 22-cv-06654-RS

15

1    grams of protein' meant '6 grams of usable protein.'" *Id.* at 13. As a result, Plaintiff lacks standing

2    under the UCL, CLRA, or FAL.

3            For the reasons stated above, Plaintiff's "misconception" may indeed have been

4    reasonable. Further, Plaintiff has sufficiently pled reliance on the protein claim on the front label,

5    as well as the omitted %DV information, as he claims he either would not have purchased the

6    products, or would have paid less for them, had they not been mislabeled. *See Brown v. Van's Int'l*

7    *Foods, Inc.*, No. 22-CV-00001-WHO, 2022 WL 3590333, at *4 (N.D. Cal. Aug. 22, 2022) ("A

8    consumer who relies on a product label and challenges a misrepresentation contained therein can

9    satisfy the standing requirement of [the UCL] by alleging ... that he or she would not have bought

10   the product but for the misrepresentation.") (citation omitted); *Daniel v. Ford Motor Co.*, 806 F.3d

11   1217, 1225 (9th Cir. 2015) (finding reliance where "had the omitted information been disclosed,

12   [Plaintiff] would have been aware of it and behaved differently") (citations omitted). Further,

13   because "[t]he standard for pleading reliance on account of an omission is low," *Madani v.*

14   *Volkswagen Grp. of Am., Inc.*, No. 17-cv-07287-HSG, 2019 WL 3753433, at *11 (N.D. Cal. Aug.

15   8, 2019), Plaintiff's claims will not be dismissed on this ground.

16           **C.  Unjust Enrichment**

17           Finally, Defendant moves to dismiss Plaintiff's claim for unjust enrichment on the grounds

18   that California law does not recognize a standalone claim for unjust enrichment. Although it is

19   true that "in California, there is not a standalone cause of action for 'unjust enrichment,'" *Astiana*

20   *v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), "[w]hen a plaintiff alleges unjust

21   enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking

22   restitution.'" *Id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231

23   (2014)). Here, given that "Defendant does not make any argument about the substance of the

24   unjust enrichment claim itself," the claim may proceed at this stage, subject to being folded into

25   other substantive claims upon being further refined. *Davidson v. Sprout Foods Inc.*, No. 22-CV-

26   01050-RS, 2022 WL 2668481, at *6 (N.D. Cal. July 11, 2022).

27

28

United States District Court
Northern District of California

# V. CONCLUSION

For the foregoing reasons, the motion to dismiss is granted in part and denied in part. Plaintiff's theories that Defendant's front label protein claims are unlawful *per se* and that Defendant unlawfully omitted the %DV in the NFP despite FDCA requirements are both dismissed. Plaintiff's claims may move forward only on their remaining misleading-by-omission theory.

**IT IS SO ORDERED**.

Dated: May 11, 2023

RICHARD SEEBORG
Chief United States District Judge